Steven Michael **JUDD**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. No. 83–2475–K(CM).

United States District Court,
S.D. California.

Jan. 9, 1987.

Irwin Gostin, Crabtree Building, San Diego, Cal., for plaintiff.

Karen M. Shichman, Asst. U.S. Atty., United States Courthouse, San Diego, Cal., for defendant.

## CORRECTED
## MEMORANDUM DECISION

KEEP, District Judge.

Plaintiff, Steven Michael Judd, is suing defendant, United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* He alleges two causes of action based upon negligence. Count 1 alleges negligence predicated upon California Health and Safety Code §§ 24050–24054, the River and Resort Act. Plaintiff's theory is that the Black Canyon Falls[1] area of the Cleveland National Forest, the site of the accident upon which this suit is predicated, is a resort; hence, under California law, defendant had a duty to sound out swimming areas and post warning signs which defendant failed to do. Count 2 alleges negligence based upon the Forest Service's own policy; it is plaintiff's theory that Forest Service policy required the posting of signs warning of hazardous diving conditions in the Black Canyon Falls area. Because it failed to do so, defendant violated a duty owed to plaintiff pursuant to federal law and hence is liable to him.

---

1. There is no specific name for the site of this accident. For convenience, the parties have called it Black Canyon Falls.

The United States denies the factual allegations of plaintiff's complaint. Further, defendant argues the posting of signs by the Forest Service under the facts of this case was a discretionary function which precludes jurisdiction over the defendant pursuant to the Federal Tort Claims Act. Assuming there is jurisdiction, the government argues that this action is covered by the Recreation Use Statute, California Civil Code § 846. Pursuant to this statute, defendant has no liability as it charged no fees, did not invite plaintiff to the falls, and the failure to post signs was not willful or malicious.

Federal jurisdiction is predicated upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* Venue is appropriate as plaintiff was a resident of the Southern District of California at the time of the incident and has continued to reside here. Further, the accident occurred upon land owned, operated, and maintained by the United States located in the Southern District of California.

## FACTS

Plaintiff is 38 years of age. On April 24, 1981 he and a friend went to the Black Canyon Falls area of the Cleveland National Forest to swim and dive. National forests are open to the public. There is no fee to enter a national forest, although one is charged a small fee if one wishes to occupy camping space in a designated campground. The Cleveland National Forest is maintained and supervised by the National Forest Service. It consists of one-half million acres of forest land that spans from foothills to high crest country (elevations are from 2,500 feet to approximately 8,000 feet) in San Diego County, Orange County, and Riverside County. The Cleveland National Forest contains 1,500 miles of streams and in 1981 had approximately two million visitors.

Within a national forest there are some developed sites although the vast amount of the forest is undeveloped. A developed site is an area where the natural environment has been altered for some use such as in visitor centers or campgrounds.

The Black Canyon Falls area of the Cleveland National Forest has not been altered. It is a natural pool formed by run-off water from the mountains. The pool is approximately 37 feet by 30 feet. On the north and south sides of the pool there are huge granite boulders. The boulders are smaller on the east, where the water runs into the pool via a small natural fall, and smaller also on the west, where the water leaves the pool down rocks that form a stream bed. The water is clear except for late summer when there is very little run-off and the water becomes stagnant and algae develop. The west side of the pool is shallow and rocks and boulders on the bottom are visible. There is one large boulder protruding from the pool which is apparently always visible. The east side of the pool is deepest with a depth of approximately 13½ feet in a two-foot pocket. Water around this pocket varies from 7½ feet to 10 feet in depth due to variations of the bedrock. There are some variations in water level, but these generally only occur after a torrential rain storm or when no water flows into the pool and water evaporates. Otherwise, due to the fact the western stream bed is large, water that flows in from the falls can be eliminated by the western stream bed.

Black Canyon Falls is located about one-quarter mile from a developed site, the Black Canyon Campground. There are no signs pointing to the falls nor is it listed on any National Forest literature. The stream passes by the campground and if one hikes up the stream over boulders and rocks, one can reach Black Canyon Falls. The only other way to get to the falls is to park on a road adjacent to them and hike down a very steep, dangerous incline.

On April 24, 1981, plaintiff and his friend parked his friend's car in a public parking area of the Black Canyon campground. There is no charge to park in public parking areas; one is only charged if one wishes to use a camping site. Plaintiff and his friend hiked to the falls via the one-quarter mile "boulder and rock" route. When they arrived, they sunned on the rocks and swam and dove off rocks into the

pool for approximately two hours. There were other persons sunning and swimming at the falls; there were a few other divers.

Plaintiff is an accomplished diver. He was a high school varsity diver who competed in two-meter diving competitions. He trained on a one-meter board and due to the fact the pool he dove into was only 9 feet deep, he had to learn to roll once he hit the water as 9 feet was not enough depth for a one-meter dive. He had some experience high diving, though as recreation and not in competition.

Plaintiff tested the Black Canyon Falls pool for depth and found a pocket approximately 13½ feet deep. He and a friend dove from rocks about 10 feet and 15 feet in height into the deeper area of the pond. Plaintiff decided to try a high dive from a rock approximately 35 feet above the water. To reach the pond from this point, plaintiff had to dive over a shelf which protruded 12 feet some 25 feet below him. Due to the fact this 35 foot high rock was farther to the west than the rocks he previously dove from, the deepest part of the pool was approximately 35 feet away, on a horizontal plane, from the spot he chose as a diving platform. Plaintiff climbed up to the rock and sat for approximately 15 minutes looking into the pool. Then plaintiff attempted a swan dive; his head hit something, presumably the bottom.[2] Due to the injury to his head, plaintiff is now a quadriplegic. Plaintiff is suing the United States for the damages he sustained as a result of the attempted swan dive. His theory is that had a sign been posted warning of the hazards of diving in Black Canyon Falls, he would not have attempted his dive.

The Forest Service knew people sunned and bathed in this area; also it was known people often jumped into the water from lower rocks. There is no evidence the Forest Service knew people jumped or dove from the 35 foot rock from which plaintiff attempted his dive, nor is there evidence of any prior diving or jumping injuries at Black Canyon Falls.

The following issues of law are presented by this case.

1. Does the "discretionary function exception" to the federal government's waiver of immunity under the Federal Tort Claims Act bar recovery by plaintiff?

2. If the discretionary function exception does not apply, is the federal government negligent under state law?

3. If the discretionary function exception does not apply, is the federal government liable for breaching a duty created by federal policy?

4. If there was a breach of state law or federal policy, was the breach of duty, if any, the legal cause of plaintiff's injury? Each issue will be discussed in turn.

## I. Discretionary Function Exception

██ A party may bring a cause of action against the federal government only to the extent that the government has waived its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). The burden of demonstrating an unequivocal waiver of immunity rests on the party bringing suit against the federal government. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984).

The "discretionary function exception" to the government's waiver of immunity under the Federal Tort Claims Act is set forth in 28 U.S.C. § 2680(a). Section 2680(a) precludes the exercise of jurisdiction over any claims "based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). *See Dalehite v. United States*, 346 U.S. 15, 33, 73 S.Ct. 956, 966–67, 97 L.Ed. 1427 (1953).

In determining whether the exception applies, a court must look to "the nature of the conduct, rather than the status of the actor" because the exception covers not

---

**2.** Plaintiff has very little memory about the attempted swan dive. Witnesses could tell he injured himself by diving, but could not see how.

only agencies, but all employees exercising discretion. *United States v. S.A. Empressa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). The section is to be applied when its purpose would be served; this is to prevent judicial "second-guessing" of administrative decisions based on political, economic, and social policy through private tort actions. *Mitchell v. United States*, 787 F.2d 466, 468 (9th Cir.1986).

The government urges that the Forest Service decision not to take precautionary measures by posting signs at Black Canyon Falls was a discretionary one by the Forest Supervisor and District Ranger and based on social, economic, and political policy. The government has relied on *Mitchell, id.,* in support of its position. In *Mitchell,* plaintiff's husband was killed when his crop duster struck unmarked power transmission ground wires. The court held that the decision of the Bonneville Power Administration not to install warning devices " 'was clearly the type of decision of an agency which Congress sought to protect from judicial review under the Tort Claims Act.' " *Mitchell,* 787 F.2d at 468 (quoting *Begay v. United States,* 768 F.2d 1059, 1066 (9th Cir.1985)). The *Mitchell* court emphasized that under *Varig,* it was irrelevant that the discretionary decision had been made at the operational level rather than at the planning level.

Based upon the testimony presented at trial, this court finds that the decision not to post warning signs at Black Canyon Falls was discretionary. Forest Service policy, as embodied in the Forest Service Manual, requires that signs warning of potentially dangerous conditions be posted only in "developed" areas of National Forest lands. Where an area is not "developed," the Forest Service vests local Forest Service administrators with discretion to post signs warning of dangers. See, Forest Service Manual, §§ 2300 *et seq.* (specifically § 2334 which concerns swimming

sites), §§ 7100 *et seq.* Thus, in the instant case, a determination of whether the decision not to post a warning sign is discretionary depends on whether the area in question is "developed" or "undeveloped" according to the Forest Service.

The Forest Service Manual defines a developed recreation [3] site as follows:

> Existing development (developed) sites consist of modifications to enhance recreational opportunities, in addition to the land, water, and vegetation....

> There is no specified kind, number, arrangement or cost of facilities which determine the existence of a developed site. This determination is based on the intent of management in instituting the site modification. As a general rule, however, a developed campground will usually include a toilet, garbage containers, fireplaces or firerings in grates or stoves, a campground sign, and a bulletin board or poster board. Other developed site kinds will have similar degrees of development.

> ... The following criteria are useful in making such determinations:

> 1. A developed site has been modified to accommodate one or more specific recreation opportunities for intensive rather than dispersed uses and is one of the site-kinds listed in the first paragraph above. Modification must include a facility installation.

> 2. At developed sites the modifications are to enhance recreation opportunities, and not merely those needed for resource protection or to satisfy administrative needs.

> 3. Developed sites are documented by approved site designs (FSM 2330.3).

> 4. For developed sites it is desirable to publish locative and other site information in directories and on maps to help people find the sites and to encourage continued or additional use.

> ... The development site consists of the actual developed area and also the

---

**3.** There are other types of developed sites such as facility installations which are inapplicable to

the issues raised herein.

peripheral area surrounding the developed area.

This peripheral area is an integral part of the development site on which modified land management practices are required in order to preserve environmental characteristics.

Forest Service Manual § 2330.5.

Based on the factors in the Forest Service definition, the court finds Black Canyon Falls was an undeveloped area. Because there have been no modifications to the falls area itself, the only means by which Black Canyon Falls could be considered a developed site is if the court were to find it peripheral to the developed area. This court cannot do so. The undisputed testimony is that the Forest Service considers the peripheral area to be the forest land immediately adjacent to a developed area, such as forest land surrounding a parking spur in a campground. No forest service regulations nor habit and custom of the Forest Service support a definition of peripheral to embrace a natural pool one-quarter mile away reached by hiking over boulders and rocks or sliding down a slippery incline. Further, this swimming area is not listed on any Forest Service literature; there are no trail signs pointing the way; there is no clear trail to the Falls; there are no facilities at the Falls. The only maintenance the Forest Service provides is to remove unnatural items from the Falls, such as broken glass or climbing ropes; this is done as part of the general Forest Service policy of keeping unnatural items out of undeveloped forests and wilderness areas and occurs on the infrequent occasions a Forest Service employee is in

the falls area. In sum, this court holds Black Canyon Falls is an undeveloped site.

Plaintiff's reliance on *Mandel v. United States,* 793 F.2d 964 (8th Cir.1986), and *Ducey v. United States,* 713 F.2d 504 (9th Cir.1983), is misplaced. *Mandel* involved a diving accident on a heavily used and easily accessible river. A sign warning of submerged rocks had been posted at the site of a fatal diving accident, and Park Service brochures warned of shallow rocks in the river. Mandel had been injured while diving in an area recommended by a forest ranger who failed to couple his recommendation with a warning of submerged rocks. In rejecting the discretionary function exception, the *Mandel* court said:

> The conduct forming the basis of the Park Service's alleged negligence was *not* the decision to institute a policy warning park users of the hazards of boating on or swimming in the Buffalo River, but rather the failure of Park Service personnel to *comply with previously adopted* safety policy.

*Id.* at 967 (emphasis added).

There is no evidence in the instant case to support a contention that the absence of a warning sign at Black Canyon Falls was a failure to "comply with previously adopted safety policy." Under Forest Service regulations, the decision to post signs in undeveloped areas is left to the discretion of the Forest Service Supervisor for the Cleveland National Forest, and the District Ranger for the Palomar Ranger District. These two supervisors have elected to post signs warning of hazards in an undeveloped areas only if the natural risks are not readily apparent to visitors, such as avalanche areas, or polluted stream water.[4]

---

4. Plaintiff in argument suggested that pursuant to Forest Service Manual § 2334 a duty arose to manage the area. Section 2334 provides in pertinent part:

. . . . .

> Streambanks and lake and reservoir shores which have not been developed for swimming and which are not within developed recreation sites or posted areas of concentrated public use should be administrated as general undeveloped areas, much the same as for hiking, riding, hunting, or other National Forest outdoor activities.

> In areas where swimming use is very limited, with only occasional swimmers, special measures are not ordinarily needed or feasible. As swimming use increases significantly, Forest Supervisors should make an evaluation to determine the need for improved swimming area management and/or development.

The facts do not support plaintiff's position. Specifically, plaintiff did not show Black Canyon Falls to be anything other than an area of limited use.

There are two reasons for this policy: preservation of the natural beauty of the forest and financial concerns.[5] Hence, the discretionary function exception to the Federal Tort Claims Act applies to the decision by the Forest Service not to post signs at Black Canyon Falls. Plaintiff is barred by the Federal Tort Claims Act from bringing this suit.

### II. If the "Discretionary Function Exception" does not Apply, is the Federal Government Negligent?

Even if the "discretionary function exception" did not apply to the decision not to post signs at the undeveloped site of Black Canyon Falls, the court finds plaintiff could not prevail under either of his two negligence claims. In Count 1 of his complaint, plaintiff alleges breach of a duty created by state law. In Count 2 of his complaint, plaintiff alleges breach of duty under federal law. Each claim will be discussed in turn.

 The Federal Tort Claims Act provides that where the federal government has waived sovereign immunity, it shall be liable "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. The liability of the government under the Federal Tort Claims Act is thus determined using the substantive law of the state in which the allegedly negligent conduct occurred. *Richards v. United States*, 369 U.S. 1, 8–10, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962); *Broudy v. United States*, 722 F.2d 566 (9th Cir.1983). In California, actionable negligence requires a showing of a legal duty to use due care, of a breach of that duty, and of a showing that the breach was the proximate or legal cause of plaintiff's injury. *United States Liability Insurance Co. v. Haidinger-Hayes, Inc.*, 1

Cal.3d 586, 594, 83 Cal.Rptr. 418, 463 P.2d 770 (1970).

### A. Does California Law Impose a Duty on the Government to Post Warning Signs at Black Canyon Falls?

Plaintiff claims that the government is required to post signs warning of diving hazards at Black Canyon Falls pursuant to California Health and Safety Code §§ 24050–24054. Section 24052 provides:

No person shall maintain a resort unless signs indicating in plain letters the depth of the water, the location of pools or eddies, and the presence and direction of currents of water are placed and maintained in the water during the season when bathing and swimming are permitted or invited.

Section 24051 imposes a duty to sound for dangers concerning the water depth and § 24053 requires safety ropes to be stretched.[6] "Resort" is defined in Section 24050 as being "any public bathing or swimming place or resort on a river or stream." Failure to comply with the duties imposed by Cal. Health & Safety Code §§ 24051 and 24052 is a misdemeanor. Cal. Health & Safety Code § 24054. Plaintiff contends that because people swim at Black Canyon Falls, the area is a resort within the meaning of Section 24050. Hence, plaintiff argues that a duty is imposed upon the government, as resort owner, to sound out swimming areas and post warning signs.

The government contends that the controlling California statute is California Civil Code Section 846. Under this section the owner of any estate or interest in real property owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose. Additionally,

---

**5.** A sign costs a few hundred dollars to make and install, and maintenance costs are high due to frequent theft of Forest Service signs.

**6.** § 24051. Soundings for dangers.
 No person shall maintain a resort unless he carefully sounds the depth of water and locates the eddies and pools and determines the presence and nature of dangerous currents,

sunken logs, rocks, and obstructions in the stream or river.
 § 24053. Safety ropes.
 No person shall maintain a resort unless safety ropes are stretched wherever necessary to show the line of eddies, pools, sunken obstructions, and other hidden dangers to bathers in the water.

such an owner has no duty to warn of dangerous conditions on the property and will not be liable for injuries unless (a) the failure to warn is willful or malicious; (b) permission to enter the property is granted in exchange for consideration; or (c) the person injured was expressly invited rather than merely permitted to enter the property. Under Cal.Civ.Code Section 846, the government argues, there was no duty to warn plaintiff of dangerous conditions such as submerged rocks. Because the two California statutes would appear to impose different duties to warn on the government, this court must first consider whether Cal. Health & Safety Code §§ 24050–24054 apply to undeveloped areas of national forest land.

### 1. *California Health & Safety Code §§ 24050–24054*

California Health and Safety Code Section 24050, *et seq.*, only applies if this court finds defendant was maintaining a "resort" as defined in that section. A resort is "any public bathing or swimming place or resort on a river or stream." Cal. Health & Safety Code § 24050. There are no reported cases interpreting Cal. Health & Safety Code § 24050. And, the definition itself is circular in that, in part, a resort is defined as a resort. Since there is no case law, this court must define "resort" and "public swimming or bathing place" to determine if plaintiff can prevail on a negligence theory if the decision to post signs is nondiscretionary.

According to the undisputed testimony of William Turrentine Jackson, historian, Cal. Health & Safety Code §§ 24050–24054 were originally enacted[7] to impose duties on commercial establishments which developed along the Russian River between 1900–1911. The timber industry in Sonoma county significantly decreased about 1900. The railroads, which had tracks in that area, started promoting the Russian River area as a swimming and bathing area. Facilities sprang up to service the thousands of visitors who started coming to the Russian River for recreational purposes. About 1909–1911 there were some drownings and near drownings in the Russian River that received considerable newspaper coverage.[8] In 1910 Mr. and Mrs. Glen F. Foulke, a very prominant couple from Santa Rosa who were staying at a resort on the Russian River, drowned in the river. Mrs. Foulke was bathing and stepped into a deep hole. It appears neither person could swim and Mr. Foulke drowned attempting to rescue her. Mrs. Foulke's uncle was a powerful politician from Santa Rosa. In 1911, Assemblyman Slater of Santa Rosa proposed the bill now contained in Cal. Health & Safety Code §§ 24050–24054. Hence, from a historical standpoint it appears Assemblyman Slater originally aimed his bill at commercial establishments along the Russian River which promoted swimming and bathing, in response to the public outcry concerning drownings, such as the Foulkes.[9] It is consistent with the known historical background that resort means an overnight facility on a river or stream whose purpose in part is to encourage swimming or bathing. This definition also is consistent with the fact § 24054 imposes criminal liability for breach of the duty: Because breach of the duty is a crime, one must have to do something other than have a hotel on a stream. By construing a "purpose" into the word resort, the result is that if one encourages persons to stay at his or her facility and swim, one must protect the person from dangers on an adjacent stream or be subject to criminal liability as well as civil liability.

■ The second part of § 24050's definition of resort is that a resort is a "public

---

7. The original bill was passed in 1911. It was reenacted in 1934 with no significant changes.

8. In the early 1900's, far fewer persons swam than do today. Many nonswimmers would wade or "bathe" in the water. Several drownings were the result of nonswimmers wading into unmarked areas of deep water.

9. This historical interpretation is supported by newspaper articles describing the bill that appeared in 1911 in Santa Rosa and San Francisco. See, Santa Rosa Press Democrat, 2/10/11, p. 1.

bathing or swimming place." In using the phrase "public bathing or swimming place" this court finds the legislature intended to include in the statute only establishments whose purpose is, at least in part, to offer to the public access to swimming or bathing.[10] Common sense dictates that a stream or river is not a public bathing or swimming place merely because members of the public bathe or swim there. Rather, one must look at the purpose of the adjacent land owner, which can in part be determined by the access given to the public to the river or stream, and also by any facilities or amenities provided, such as dressing rooms or picnic tables.

■ Applying these constructions of "resort" and "public bathing or swimming place" to the instant case, Black Canyon Falls is not a resort pursuant to Cal. Health & Safety Code § 24050. It is not a "resort" because it is not an overnight facility on a river or stream whose purpose in part is to encourage swimming or bathing. The Black Canyon campground is one-quarter of a mile down stream from Black Canyon Falls. Black Canyon Falls is not designated on any Forest Service literature or maps. There are no trail signs directing the public to the Falls; indeed, there are no clear trails to the Falls. In sum, the owner of the overnight facility at the campground, the United States, does nothing to encourage the use of the Falls, nor does it benefit directly or indirectly from their use. Further, Black Canyon Falls itself is not a "public bathing or swimming place" pursuant to § 24050. The Forest Service has done nothing to develop the area: it is a natural pool with no amenities. The only maintenance performed by the Forest Service is to unsystematically remove unnatural items, such as climbing ropes and glass, from the area. Additionally, the Forest Service has done nothing to encourage the use of the Falls or to provide access to the area for swimming or bathing.

Because this court holds Black Canyon Falls and Black Canyon campground are not "resorts" within the meaning of Cal. Health & Safety Code §§ 24050–24054, this statutory scheme does not create a duty upon which defendant's civil liability can be predicated.

2. *California Civil Code § 846*

The government contends the controlling California statute which defines the duty of the Forest Service under the facts of this case is Cal.Civil Code § 846. This section provides a landowner has no liability for failure to keep premises safe for entry or use by others for any recreational purposes or to give any warning of hazardous conditions except as follows:

... (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

Plaintiff argues he fits into category (a) or (b). It is clear he was not expressly invited to enter Black Canyon Falls (subsection (c) above). This court rejects plaintiff's argument.

■ First, there is no evidence the failure to post warning signs was willful or malicious, pursuant to subsection (a). Under California law, a finding of willful or wanton misconduct generally requires three elements: (1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is a probable, as opposed to possible, result of the danger, and (3) conscious failure to act to avoid the peril. *Von Tagen By & Through Von Tagen v. United States*, 557 F.Supp. 256, 259 (N.D.Cal.1983). Under California law, "willful or wanton

---

10. This finding is supported by the historical background testified to by Mr. Jackson, and the legislative history testified to by Mr. William Keller whose legislative research leads him to conclude the specific aim of §§ 24050–24054 was to regulate facilities maintained for the purpose of bathing or swimming.

misconduct is intentional wrongful conduct, done with either a knowledge that serious injury to another will probably result or with a wanton and reckless disregard of the probable results." *Id.* at 259.

In this case, there is no evidence that Forest Service personnel actually knew that persons dove from the spot plaintiff attempted his dive. Indeed, the evidence is that the Forest Service knew persons sunned, swam, and bathed in the area, and jumped and dove off lower rocks; there is no evidence anyone at the Forest Service was aware persons actually dove or jumped from high rocks into this small pool. Further, the geography of the area itself would not lead a reasonable person to believe such a dive would be attempted. A dive from 35 feet high off a boulder into a small pool whose depth is approximately 13½ feet at its deepest spot, and whose bottom is visibly rocky and uneven is not the type of danger about which a court would impose constructive knowledge on a landowner. The risk is too obvious to a potential diver.

■ As to subsection (b), the evidence is undisputed that plaintiff and his companion paid no consideration for their day at the Cleveland National Forest: national forests do not charge entrance fees. Plaintiff argues that because persons who used a designated camping site at Black Canyon Campground paid a fee, subsection (b)'s exception to § 846 immunity should apply to him. No cases cited support this construction of subsection (b). Plaintiff is not claiming damages for a breach of duty which occurred within the developed campground site but rather a claimed breach of duty which occurred at an undeveloped site one-quarter of a mile away. Again, no Forest Service literature lists Black Canyon Falls as a swimming area, and there are no signs pointing to it or any clear trail to hike to get to it from the campground. Hence, this court holds subsection (b) is inapplicable to plaintiff.

In sum, pursuant to Cal.Civil Code § 846, defendant has no liability for failure to keep Black Canyon Falls safe for recreational use or for failure to warn of dangerous conditions.

### B. Does Federal Policy Impose a Duty on the Government to Post Warning Signs at Black Canyon Falls?

Plaintiff argues that pursuant to the Forest Service Manual, a duty was created to warn of the dangers of diving at Black Canyon Falls. This court rejects this argument.

The Forest Service is under the authority of the Secretary of Agriculture. Pursuant to 7 C.F.R. § 2.7, the Secretary has delegated authority to each general officer or agency head supervised by the Secretary, and further has empowered these general officers or agency heads to delegate authority to appropriate officers and employees. In other words, the Forest Service operates pursuant to "line authority."

The Forest Service Manual does provide for signs to be posted at developed recreational sites. See Forest Service Manual §§ 2300 *et seq.*, §§ 7100 *et seq.* However, posting of signs in undeveloped sites is left to the discretion of the Forest Service Supervisor and the Supervisor, in large part, delegates his or her authority to his or her Forest Ranger. In the Cleveland National Forest, the decision to post signs in undeveloped areas is based on the obvious nature of the natural hazard and resources available with an overall goal of preserving the natural beauty of the forest. Undisputed testimony before this court is that the Forest Service Supervisor for the Cleveland National Forest and the Forest Ranger for the Palomar Forest District did not believe there were any unnatural or imperceptible hazards at Black Canyon Falls. Each recognized hazards existed, but they were obvious and visible ones created by nature, such as big boulders, shallow water, and slippery rocks. For this reason, no signs warning of hazardous conditions were posted at Black Canyon Falls.

■ Since the decision to post signs in undeveloped areas of the national forests is discretionary rather than mandatory, and since the Black Canyon Falls is an undeveloped site, and since the Forest Service Su-

pervisor for the Cleveland National Forest and the Forest Ranger for the Palomar Forest District were exercising their discretion when they did not post warning signs at Black Canyon Falls, plaintiff cannot prevail on his second claim predicating liability on a breach of duty pursuant to federal law.

## C. *Even if There were a Breach of Duty of Plaintiff, was Such Breach a Legal Cause of Plaintiff's Injury?*

Under California law, "[d]efendant's negligent act must be the ... legal cause of the plaintiff's injury in order for the defendant to be held liable." *Valdez v. J.D. Diffenbaugh Co.*, 51 Cal.App.3d 494, 509, 124 Cal.Rptr. 467; citing 4 Witkin, Summary of California Law (8th ed. 1974) Torts § 620, p. 2901. "The first element of legal cause is *cause in fact:* it is necessary to show that ... "but for" the defendant's negligence the injury would not have been sustained." 4 Witkin, *supra*, Torts § 622, p. 2903. Once defendant's negligence has been established, the doctrine of proximate cause may operate to limit liability. *Id.* at p. 2904. Proximate cause itself is thus "not a question of causation: it is simply a policy determination of whether or not the defendant should be held responsible ..." *Valdez v. J.D. Diffenbaugh Co.*, *supra*, at 509, 124 Cal.Rptr. 467, citing Prosser, Law of Torts (4th ed. 1971) p. 244.

This court cannot find the failure to post warning signs "caused" plaintiff to attempt his ill-fated swan dive, despite his testimony that he would not have dived if there had been a warning sign.

The hazards of this dive were readily apparent to a reasonable person. The target deep spot was small, the diving rock was 35 feet high and sloping; there was an overhanging rock 20 feet below plaintiff which extended 12 feet and over which plaintiff had to dive. The bottom of the pool was visibly shallow in spots and rocky in spots. Certainly, as Dr. Burg testified, only intoxicated persons [11] and extreme risk takers would attempt this dive. And, for these groups, a sign would be unlikely to deter any but these who wanted an excuse to not attempt the dive. There is no evidence plaintiff wanted an excuse not to attempt the dive. He was an experienced diver who knew from his experience 9 feet was not enough depth to handle a one-meter dive without evasive tactics. The attempted swan dive was approximately 10 times higher than one meter, and plaintiff knew that in spots the water was much shallower than 9 feet. The natural risks were readily apparent. It is inconceivable a sign could have conveyed more to plaintiff about risks of diving than standing 35 feet in height above Black Canyon Falls conveyed to plaintiff.

For the foregoing reasons, judgment shall be entered for defendant.

---

11. There is no evidence that plaintiff was intoxicated.