**Felix VALDEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–F–92–5235–REC.**

United States District Court,
E.D. California.

Oct. 8, 1993.

William L. Shipley, U.S. Attys. Office, Fresno, CA, for U.S.

Stephen B. Simon, Greenberg and Simon, Santa Monica, CA, for plaintiff.

## ORDER RE DEFENDANT'S MOTION FOR DISMISSAL OR SUMMARY JUDGMENT

COYLE, Chief Judge.

On September 14, 1993, this Court heard defendant's Motion for Dismissal or Summary Judgment. Upon due consideration of the written and oral arguments of the parties and the record herein, the Motion for Dismissal is granted and the Motion for Summary Judgment is denied for the reasons set forth herein.

### I. *BACKGROUND*

Plaintiff Felix Valdez ("Valdez") sues defendant United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq., to recover damages for injuries he sustained while hiking in Kings Canyon National Park ("Park"). The United States owns the Park, and the National Park Service ("NPS") of the Department of the Interior operates it.

Plaintiff worked as a dishwasher and waiter for a concessionaire operating in the Park, where he also resided at the time of the accident. Plaintiff's employer paid for his admission into and use of the Park. On the afternoon of July 25, 1991, plaintiff and three companions hiked along Sunset Trail to the pooling area at the base of Ella Falls in the Grant Grove subdistrict of the Park, drinking beer along the way. Rather than crossing the water fall or Sequoia Creek which continues from the pooling area of the fall,[1] they hiked off the trail and climbed approximately ninety feet up the left side of the waterfall and across its top. As plaintiff began to descend down the right side, he lost his footing and fell to the bottom, airborne from drop to drop. He allegedly was rendered a quadriplegic.

Plaintiff claims $60,000,000.00 in damages due to defendant's creation of known dangerous conditions by: (1) negligently designing and maintaining a trail in a way that *appears* to lead the trail onto the rock bed of the

---

1. While resting at the left side of the base of the waterfall, the party stopped to speak to a camp counselor accompanied by a few kids playing on the fall. Plaintiff recalls seeing the camp counselor and kids leave the area on the right side of the waterfall, presuming that they had used the access to cross. (Valdez Dep. at 67.)

waterfall; (2) having inadequate and/or insufficient warning signs; (3) failing to have guard rails or to otherwise make the area safe; and (4) failing to erect barriers to keep people from attempting to cross the stream.

Defendant moves to dismiss this action for lack of subject matter jurisdiction because the challenged conduct falls within the "discretionary function" exception to the Federal Tort Claims Act's ("FTCA") waiver of sovereign immunity, 28 U.S.C. § 2680(a). Alternatively, defendant seeks summary judgment on the basis that it has no duty under California law to inspect, maintain, sign, or otherwise make safe the natural and unimproved areas of the Park.

## II. *MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION*

 The plaintiff always bears the burden of establishing subject matter jurisdiction. In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. Schwarzer, Tashima, Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:77, at 9–14 (1993) (citing *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989)). Because the government's motion to dismiss is a factual attack, this Court may determine the facts for itself, considering the allegations of the complaint and extrinsic evidence. Schwarzer et al., *supra,* § 9:84, at 9–15 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir.1977)). This Court may weigh disputed evidence and determine the facts to evaluate for itself the merits of jurisdictional claims. *Id.* § 9:85, at 9–16 (citing *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987)). Moreover, no presumptive truthfulness attaches to plaintiff's allegations or any inferences drawn therefrom. *Id.* § 9.86, at 9–16 (citing *Williamson v. Tucker,* 645 F.2d 404 (5th Cir. 1981)).

### A. *Jurisdiction Pursuant to FTCA*

 The United States waives sovereign immunity to permit federal jurisdiction for claims against its allegedly tortious conduct pursuant to 28 U.S.C. § 1346(b). The relevant "discretionary function" exception of the second clause in 28 U.S.C. § 2680(a), however, limits this jurisdiction:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon ... the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Defendant moves the court to find that plaintiff's claim is based on the government's (non)performance of a discretionary function—trail design, signing, and placing of guard rails and barriers. A 12(b)(1) motion, not summary judgment, appropriately raises this jurisdictional defense. *See* 31 Lawyers Edition, *Federal Procedure* § 73:350, at 732 (1985).

### B. *Gaubert's Two-step Test to Find Discretionary Function*

In *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court potentially expanded the discretionary function exception by holding that any decision that involves "judgment" or "choice" is included, regardless of the decision-maker involved. Erwin Chemerinsky, *Federal Jurisdiction,* § 9.2, at 120 (Supp. 1992). Moreover, the Court abolished any dichotomy between discretionary functions and operational (not planning) activities.

 *Gaubert* adopts what is essentially a two-step approach to finding an excepted act within § 2680(a):

> (1) First, inquire whether the challenged action is a discretionary one that "involve[s] an element of judgment or choice." [2]

> (2) Second, inquire whether the challenged discretionary decision was based on

---

**2.** This first requirement is not satisfied if a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive." *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273.

considerations of social, economic, and political policy.[3]

The exception protects failures to act, as well as affirmative acts. *See Schieler v. United States,* 642 F.Supp. 1310, 1314 (E.D.Cal. 1986).

## C. *Applicability of the Discretionary Function Exception*

■ Defendant argues that the National Park Service personnel's design of trails and placement of warning signs, guard rails, or other barriers involve the exercise of discretionary authority. Defendant relies on two sources to extract this "discretionary authority": (1) NPS's primary policy mandate set out by the Park Service Organic Act, 16 U.S.C. § 1, et seq.[4] (Allen Decl. ¶ 5) and (2) NPS's Management Policies, as discussed by Peter B. Allen, an NPS Visitor Protection Specialist, and Marvin Miller, Grant Grove Subdistrict park ranger. Moreover, defendant claims that there are no statutes or regulations which embody specific and mandatory requirements with respect to safety in the design and/or maintenance of trails in a national park. (Allen Decl. ¶¶ 12–13.)[5]

Defendant does disclose that the NPS has promulgated Park Management Plans which include guidelines to assist in the design and maintenance of Park trails in back country areas of the Park. Included among the guidelines are instructions regarding the appropriate types of and place for obtaining materials for filling trail treads, how to rehabilitate abandoned trail treads, and how to avoid disturbing sensitive plant populations found within the park. (Def.['s] Mem. P. & A. Supp. Mot. Dismiss or Summ. J. at 11.) According to defendant, however, these guidelines, "as is true of most NPS regulations, instruct the park management personnel to consider the impact of trail construction on the habitat and environment of the park, but leave the ultimate responsibility for individual decisions to those personnel." *Id.*

Defendant observes that there is a tension between its primary mandate to protect the parks' ecological health and historic integrity and its provision for their public enjoyment. Defendant argues that the Management Policies recognize that the individual circumstances and conditions of each park require flexibility in the application of the Management Policies. Thus, it is left to the Superintendent of each Park, and his/her Park personnel to make the specific determinations regarding how best to carry out the policy mandate given the NPS by Congress. (Allen Decl. ¶ 7, 8; Allen Dep. at 18, 20; Miller Dep. at 7–9, 44–45.) In short, in the absence of mandatory directives regarding the installation of safety devices in the natural areas of the parks, the Management Policies explicitly provide for discretionary decision making with respect to safety measures.

Second, the government argues that the NPS's discretionary decisions involve a balancing of safety concerns with social and political concerns that underlay its mandate to preserve the Park unimpaired in its natural condition. These acts satisfy *Gaubert's* requirement that the function consider public

---

**3.** "When governmental policy, expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion. *For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.* The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert,* 499 U.S. at 324–25, 111 S.Ct. at 1274–75 (emphasis added).

**4.** "[T]o promote and regulate the use of the Federal areas known as national parks ... by such

means and measures as conform to the fundamental purpose of said parks ... which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1.

**5.** "I have reviewed the NPS Management Policies, NPS Guidelines, and Management Plans for Sequoia and Kings Canyon National Parks and have found no statutes, policies or regulations that mandate specific safety standards to be followed in the design or maintenance of trails ... [or] for the purpose of reducing or removing naturally existing hazardous conditions found in the natural areas of the Park...." (Allen Decl. ¶¶ 12–13.)

policy. Defendant cites several cases analogous to the instant case. *See, e.g., Kennewick Irr. Dist. v. United States,* 880 F.2d 1018 (9th Cir.1989) (The decisions made by the U.S. Bureau of Reclamation in designing an irrigation canal that later broke fell within the discretion function exception, barring tortious suits on the theory of negligent design); *Mattice v. United States,* 752 F.Supp. 905 (N.D.Cal.1990) (Weighing safety and aesthetic considerations, the decision of the National Park Service to construct a guardrail out of redwood instead of steel fell within the discretionary function exception); *Schieler,* 642 F.Supp. at 1310 (The failure to place a warning sign at an area where plaintiff was struck by lightning was held to be within the discretionary function exception); *Judd v. United States,* 650 F.Supp. 1503 (S.D.Cal.1987) (The failure to place a warning sign regarding the hazards of diving at Black Canyon Falls in California was held to be within the discretionary function exception); *Zumwalt v. United States,* 928 F.2d 951 (10th Cir.1991) (The absence of warning signs was held to be "part of the overall policy decision to maintain the Trail in its wilderness state," and was shielded from judicial review by the discretionary function exception).

Plaintiff's opposing papers fails to effectively address any of defendant's arguments for dismissal because he misinterprets the language of the discretionary function exception clause. Plaintiff erroneously grafts the "exercising due care" requirement of a separate FTCA exception, enumerated in the first part of § 2680(a), onto the discretionary function exception, which is located in the second part of the same subsection.[6] *See Hatahley v. United States,* 351 U.S. 173, 76

S.Ct. 745, 100 L.Ed. 1065 (1956) (distinguishing and applying separately the two clauses of § 2860(a)).

By assuming that Park personnel must exhibit due care for the discretionary function exception to apply, plaintiff neglects to argue against both defendant's assertions of discretionary authority and policy consideration. Rather, plaintiff contends that the Park Service personnel has a "duty of due care" to visitors, offering a passage from the Loss Management Guidelines to establish this standard of care.[7] Plaintiff further observes that the NPS's "Grant Grove: Kings National Park California" visitor brochure fails to satisfy this warning standard, especially with respect to the Ella Falls area. (Pl.['s] Mem.P. & A. In Opp. Def.['s] Mot. Dismissal or Summ.J. at 5; Ex. C.) The most relevant assertion in plaintiff's papers is that defendant's moving papers are "lacking in any authority for the proposition that signage is discretionary under all circumstances."

Plaintiff presented a more apposite rebuttal in oral argument—that Chapter 22 of the Loss Control Management Guidelines removes discretion from lower management. *See infra,* at 9 n. 6. However, plaintiff accords too much weight to the Guideline, essentially exaggerating its function. If the Guideline functioned as the absolute directive that plaintiff interprets it to be, the Park Service would be unreasonably and unrealistically required to erect a fence around or place a warning sign at every attraction that is conceivably hazardous—that is, at the foot of every elevated land mass, ad infinitum. In this case, plaintiff essentially contends that the Guideline removes discretion from the Park Service to not plant an unnecessary

**6.** 28 U.S.C. § 2680(a) immunizes "[a]ny claim BASED UPON *an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation be valid, whether or not such statute or regulation be valid,* or BASED UPON **the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."** (Emphasis added.)

**7.** Chapter 22 of the Loss Control Management Guidelines reads, in pertinent part:

*Educational Materials, Signs, Programs*—all areas will provide any special materials, signs, and programs to alert the public of potential dangers.
1. Brochures specific to the area should contain safety messages that direct attention to special hazards or attractions that could be potentially hazardous to the visitor.

. . . .

3. The park Safety Officer should review the signing of the park and determine if it is appropriate for the area signed and if it is in good repair. Any signs needing to be replaced or repaired should be brought to the attention of management.

warning sign that points out the obvious: climbing steep waterfalls is dangerous. Plaintiff can offer no legal authority, analogizing the Guidelines to similar regulations which receive such literal interpretation, to support his view.

### III. *MOTION FOR SUMMARY JUDGMENT*

Because this Court lacks subject matter jurisdiction, it has no power to grant summary judgment or any other motion going to the merits of the action. Schwarzer et al., *supra,* § 14:23, at 14–7 (citing *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908 (9th Cir.1989)). Summary judgment is denied.

ACCORDINGLY, IT IS ORDERED that defendant's Motion for Dismissal is granted as set forth herein.

IT IS FURTHER ORDERED that defendant's Motion for Summary Judgment is denied as set forth herein.