**James R. TERMINI, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America,
Defendant–Appellee.**

**No. 90–56050.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted October 8, 1991.

Decided May 7, 1992.

appeal is not how we would have exercised our discretion, for it is not our discretion to exer- cise.

Lawrence M. Schulner, Camarillo, Cal., for plaintiff-appellant.

Tomson T. Ong, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before FLETCHER, D. W. NELSON and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

This case arises out of an accident which the appellant, James Termini, suffered while driving on a United States Forest Service (USFS) Road in the Angeles National Forest in California. The appellant mistook a spur that forked off the road for the road itself. The spur, however, ended at a cliff over which the appellant plunged when the brakes on his 1967 Jeep failed. The appellant incurred serious injuries as a result.

The appellant sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2674 *et seq.* (1988), alleging negligence on the part of the USFS in the design and maintenance of the forest road system. The FTCA renders the United States liable in tort to the same extent as a private individual under the law of the place where an injury occurs. California has enacted a Recreational Use Statute, Cal.Civ.Code § 846 (West Supp.1991), which provides private landowners with a substantial measure of immunity from liability for injuries incurred by those entering or using their land for recreational purposes. The district court, after holding a bench trial,[1] found this statute to bar the appellant's action and entered a decision in favor of the United States.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 (1988). We agree with the appellant that the actions of the USFS in constructing a road that ended at a precipice, and in failing to warn of this hazard, constituted willful and malicious behavior, and that the protections of California's Recreational Use Statute do not encompass such conduct. We reverse and remand for further proceedings to determine the extent of the United States' liability.

I.

The appellant, accompanied by two companions, entered the Angeles National Forest on June 1, 1986. He drove his Jeep along a single lane, unpaved dirt road, built and maintained by the USFS, which meanders back and forth across a creek bed in Pacoima Canyon. He eventually reached a fork in the road. Both branches appear to continue on for some distance and look much the same. The USFS has bladed each to the same degree, and has erected no signs to indicate that one side of the fork is a through road while the other is a dead end.

The appellant took the left side of the fork, believing this to be a continuation of the canyon road. The route he chose is in fact a spur that ends at a steep cliff. Not until appellant had driven uphill for some distance to reach the flat portion of the spur did this fact become evident to the appellant and his companions. At that point the appellant applied his brakes, but they failed. The Jeep rolled over the cliff with the appellant and one companion still in it. The appellant suffered serious injuries that have rendered him a paraplegic.

---

1. 28 U.S.C. § 2402 (1988) provides that actions against the United States under the FTCA shall be tried to a court without a jury.

The district court found that "[w]ith normal (average) braking efficiency, and at contemplated speeds on this type road (not exceeding 10 miles per hour) bringing a vehicle to a full stop is entirely unproblematic within normal limits of human reaction time lag." [Memorandum Decision at 2–3]. On the basis of this finding, and the fact that both the canyon road and the spur are not heavily travelled, the court held that California's Recreational Use Statute served to bar the plaintiff's action. While the parties devote considerable attention to the question whether the district court's finding regarding an average driver's stopping ability on the spur represents clear error, we need not reach that issue. We conclude that the United States' actions in building and maintaining a road that ends, without warning, at a cliff, and which allows absolutely no margin for driver or mechanical error, or for adverse natural conditions, constituted willful and malicious conduct. The Californian cloak of landowner immunity does not extend to such behavior, and the district court clearly erred in holding to the contrary.

## II.

The FTCA waives the United States' sovereign immunity from liability for tortious conduct committed by its employees within the scope of their employment. 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1988). "[A]n action under FTCA exists," however, "only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." *Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980). If, under the laws of the State where the United States' activity takes place, suit could not be brought against a private individual for engaging in such activity, then a cause of action may not be maintained against the United States either. *See* 28 U.S.C. § 1346(b) (1988).

California has in place a Recreational Use Statute which accords private landowners substantial immunity from actions in tort by those who come onto their land for recreational purposes. Cal.Civ.Code § 846 (West Supp.1991).[2] No one disputes that the appellant and his companions entered the Angeles National Forest to sightsee and to do some shooting, making section 846 relevant to this controversy. The section provides that, with three exceptions, a landowner who puts her land to recreational use owes no duty of care and no duty to warn individuals who enter for that purpose. Two of the statutory excep-

**2.** The statute provides:

An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

A "recreational purpose," as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hand gliding, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.

An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

Nothing in this section creates a duty of care or ground of liability for injury to person or property.

tions do not apply to this case.[3] The third withholds immunity "for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." *Id.* The appellant challenges the district court's conclusion that this exception does not apply to the USFS' actions in building and maintaining a road that leads directly to a cliff. Our decisions in *Spires v. United States*, 805 F.2d 832, 833 (9th Cir.1986), and *Rost v. United States*, 803 F.2d 448, 450 (9th Cir.1986), counsel that the district court's determination is subject to review for clear error.

■ We noted in *Spires* and *Rost* that the California courts generally apply a three part test to assess whether a landowner's actions constitute willful and malicious behavior under section 846. *Spires,* 805 F.2d at 834; *Rost,* 803 F.2d at 451. Under this test, the courts look for the following " 'essential elements ... [which] raise a negligent act to the level of willful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril.' " *New v. Consolidated Rock Products Co.,* 171 Cal. App.3d 681, 217 Cal.Rptr. 522, 526 (1985) (quoting *Morgan v. Southern Pacific Transportation Co.,* 37 Cal.App.3d 1006, 112 Cal.Rptr. 695, 698 (1974)); *see also Charpentier v. Von Geldern,* 191 Cal. App.3d 101, 236 Cal.Rptr. 233, 240 (1987); *Bains v. Western Pacific Railroad Co.,* 56 Cal.App.3d 902, 128 Cal.Rptr. 778, 779 (1976).

■ It is not clear whether the district court found the first element of this test satisfied by the facts of this case. It simply stated that "[h]ere, there was no actual or constructive knowledge that a peril existed other than that a cliff can be dangerous." [Memorandum Decision at 4]. The United States argues strenuously before this Court that it lacked knowledge of any peril to be apprehended with respect to the spur on which the appellant suffered his accident, largely on the grounds that the cliff at the spur's end was not that dangerous because the chances of someone driving over it were small. This argument appears, however, to conflate the first and second elements of the willful and malicious standard. The likelihood of an individual actually driving over the cliff speaks to the probability of injury because of the cliff's unmarked presence, not to the inherently dangerous nature of the cliff in the first instance. Common sense dictates that a precipice at the end of a road constitutes a peril to be apprehended. It is equally clear that the United States possessed actual knowledge of this peril. It does not deny that the USFS built and maintained the spur that ends literally at the cliff's edge. We thus have no difficulty in concluding that the first prerequisite to a finding of willful and malicious behavior under California law is met here.[4]

The district court found, however, that the second element of the willful and malicious test was not satisfied. It determined that the United States lacked actual or constructive knowledge that injury on the

---

**3.** The statute does not immunize a landowner from liability where she receives consideration in return for permitting an individual to enter her land, or where she expressly invites rather than merely permits an individual to come upon her premises. The appellant testified below that he had paid no fee to enter the Angeles National Forest. He also stated that he had neither been personally solicited to enter the forest nor seen any advertisement encouraging the general public to do so. The dispute in this Circuit as to whether promotional literature or advertisements directed at the general public can constitute an express invitation for purposes of section 846, *compare Simpson v. United States,* 652 F.2d 831 (9th Cir.1981) *with Phillips v. United*

*States,* 590 F.2d 297 (9th Cir.1979) is not, as a result, implicated by the facts of this case.

**4.** This case differs from *Spires,* where we found that the United States had not acted willfully and maliciously with respect to a five-foot ditch that had been carved out of a sandy beach on United States property by flow from a storm sewer on the season's first hard rain only hours before a jogger tumbled into it. No evidence existed, we concluded, that the United States had or should have had knowledge of the ditch in the brief period of time between its creation and the jogger's accident. Here, while the spur's exact history is not clear, both parties agree that the USFS not only built it but has maintained it for years.

spur was a probable, as opposed to a possible, result of the unmarked precipice at the road's end. The district court clearly erred in reaching this conclusion.

■ As we noted in *Rost*, constructive knowledge under California law "is measured by an objective standard: 'whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct.'" 803 F.2d at 451 (quoting *Chappell v. Palmer*, 236 Cal.App.2d 34, 45 Cal.Rptr. 686, 688 (1965)). We have no doubt that a reasonable person standing in the shoes of the United States would have recognized the probability of an accident eventually occurring on the spur as a result of the fact that it leads directly and without warning to a cliff's edge. The district court found, and the United States does not dispute, that the spur is indistinguishable from the other roads in Pacoima Canyon. Unlike the other spurs in the canyon, which appear to be shorter and wider extensions of the main road, this particular spur is approximately one hundred and thirty-four feet long. Further, the USFS has bladed and maintained the spur in such a way that a driver can easily mistake it for the main road and venture unwarily down it. The district court also found, and the United States again does not dispute, that the cliff is not visible from the beginning of the spur. It comes into view only after one has driven over the crest of a hill two-thirds of the way down the spur, when one is approximately forty feet from the cliff. While the district court might correctly have concluded that at that point, and under normal conditions, a driver on the spur can still come to a stop before reaching the cliff's edge, this conclusion does not provide sufficient support for its holding that the United States should not have known that sooner or later an accident would oc-

cur if it did not warn or guard against the cliff's presence.

The spur as designed and maintained simply does not account for the possibility of error, be it induced by human, mechanical or natural factors. There appears little dispute that a delay of only a few seconds in the application of one's brakes can lead to the sort of accident that befell the appellant.[5] Thus, a momentary lapse in a driver's concentration, weather conditions creating poor visibility, water on a vehicle's brakes, or mechanical failure of the sort present in this case can well cause serious injury. A reasonable person would certainly take these factors into account in considering the likelihood that an accident would eventually occur on the spur. We think it clear, therefore, that the United States should have recognized the probability of injury on the road that it had built. We recognize that there are many spurs throughout the Pacoima and other California canyons, and that all drivers must take certain precautions while travelling such dangerous roads. The unusual nature of this spur, however, warranted special precautionary measures by the United States.

We find support for this conclusion in the fact that the USFS failed to observe its own safety standards in its maintenance of the spur. In *Rost* we considered the USFS' lack of compliance with known safety regulations an important factor in determining that it possessed constructive knowledge that injury would likely result from its actions. 803 F.2d at 452. Here, while the district court made no findings in this regard, the record clearly indicates that the USFS failed to observe established regulations governing its conduct. The United States' principal expert at trial noted that the Manual on Uniform Traffic Control Devices, published by the United States De-

---

5. The district court found, and the record supports, that contemplated speeds on the spur would not exceed ten miles per hour. The testimony indicated that this is equivalent to a speed of 14.66 feet per second. The United States' expert stated at trial that it would take 2.5 seconds for a driver under normal conditions to perceive and react to the cliff by applying her brakes. During this period a vehicle would cover 36.55 feet. Only a slight delay in the application of one's brakes, therefore, would lead to a vehicle tumbling over the cliff's edge. Even at the speed of five miles per hour, or 7.3 feet per second, which the United States contends is the speed one should reasonably contemplate vehicles travelling on the spur, a delay of a few seconds would again result in disaster.

partment of Transportation and incorporated into the USFS handbook, provides that warning signs should be erected wherever "hazards are not self-evident" and wherever "it is deemed necessary to warn traffic of existing or potentially hazardous conditions." A cliff at the end of a dirt road that is not visible from the beginning of the road would certainly seem to qualify for a warning sign under these guidelines. That the USFS failed to erect such a sign where its own manual indicated that it should do so suggests constructive, if not actual, knowledge on its part of the significant risk created by its actions.

The district court mistakenly relied on the fact that travel on the spur is light in concluding that the United States should not have known that an accident was likely to take place on it. That only two vehicles a day typically use the spur seems to us much less important than the fact that it abruptly terminates at a cliff. We similarly reject the United States' argument that it lacked constructive knowledge of the probability of injury on the spur because no accidents had previously occurred there. The California courts have frequently rejected such reasoning, noting that "the matter of probability is not to be assessed solely by the number of prior accidents, which adventitiously may have been few, but by all the circumstances." *Lostritto v. Southern Pacific Transportation Co.*, 73 Cal.App.3d 737, 140 Cal.Rptr. 905, 909 (1977). *See also Morgan v. Southern Pacific Transportation Co.*, 37 Cal.App.3d 1006, 112 Cal.Rptr. 695 (1974) (finding willful and malicious conduct despite argument that "there was no evidence of prior accidents in the area and, therefore, there was no actual knowledge of possible peril to pedestrians.").

It would have been very easy for the United States to take precautions sufficient to guard against the sort of injury that occurred here. The USFS could simply have erected a sign at the fork indicating which branch represented a continuation of the main road, or warning drivers of the cliff at the spur's end. With even less difficulty it could have avoided building a road leading directly to the cliff's edge, or

not have bladed that road to resemble a normal thoroughfare. It is not surprising, therefore, that the United States does not dispute that it consciously failed to act to avoid the peril posed by the cliff, and we have no difficulty in finding this third element of the willful and malicious test satisfied by the facts of this case.

We conclude that under California law the conduct of the USFS in designing and maintaining the road on which the appellant suffered his accident represented willful and malicious behavior, and that section 846 does not, as a result, bar the appellant's action in tort.

We REVERSE and REMAND for further proceedings to determine the extent of the United States' liability.