**Daraxa Lee MATTICE, By and Through her guardians ad litem, Gregory G. MATTICE and June Mattice, Plaintiff–Appellant,**

v.

**UNITED STATES of America, DEPARTMENT Of the INTERIOR, Defendant–Appellee.**

No. 90–16217.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 10, 1991 *.

Decided July 14, 1992.

R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Thomas J. Brandi, James D. Downing, Bianco, Brandi & Jones, San Francisco, Cal., for plaintiff-appellant.

Gail Killefer, Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee.

Before: SKOPIL, PREGERSON, and O'SCANNLAIN, Circuit Judges.

SKOPIL, Circuit Judge:

Daraxa Mattice, by and through her guardians ad litem, appeals from summary judgment, 752 F.Supp. 905, and dismissal of her action against the United States under the Federal Tort Claims Act. 28 U.S.C. § 1346(b) (1988). She seeks damages for personal injuries sustained when she drove off a national park road and dropped 350 feet to the beach below. We

hold that summary judgment was proper because the United States was protected by California's recreational use statute.

## BACKGROUND

On December 13, 1987, 14 year old Mattice was congregating with friends at the Crescent Beach picnic area in the Redwood National Park. Around three o'clock in the morning, the group began to break up. One of the boys had been drinking, and Mattice offered to drive him home in his vehicle. The boy agreed, but they decided to take a test drive to make sure Mattice could drive the vehicle. From the picnic area, Mattice turned right on Enderts Beach Road and drove up from the beach toward an overlook. At a curve, Mattice drove off the road, through the wooden guardrail and suffered serious injuries.

Enderts Beach Road is a paved, two-lane secondary access road that is the main road in the park. From Highway 101, it leads into the park and eventually comes to a deadend at a trailhead just past the Crescent Beach Overlook. At the base of the hill leading to the overlook, a sign portrays a winding road and advises a speed of 15 miles per hour. Another 50 feet up is a sign indicating multiple curves ahead. From there the road curves several times before reaching the overlook. A redwood guardrail with reflectors begins just before the overlook parking area where the road curves to the left. A temporary center line stops at the overlook parking area. Mattice crashed into the guardrail just past the overlook parking area.

The park service installed the guardrail in 1977 to prevent people from shoving vehicles over the cliff and to delineate a path for pedestrians. Redwood guardrails are consistent with park policy of using native materials to maintain a natural environment in the park. In the ten years preceding the accident, nine accidents occurred on Enderts Beach Road, but none occurred near the Crescent Beach Overlook. On several occasions, however, park employees noticed damage to the guardrail that appeared to have been caused by vehicle impact. Before the accident, park employees had recommended that the road be painted with shoulder stripes and permanent center stripes, but nothing had been done.

Mattice brought this action, alleging that the government was negligent and/or willful in using wooden guardrails and in failing to warn adequately of the danger of the winding road. The district court held that the government was protected by discretionary immunity and dismissed the action. *See* 28 U.S.C. § 2680(a) (1988). Alternatively, it granted summary judgment because the government was shielded by California's recreational use statute. *See* Cal.Civil Code § 846 (West 1992). We do not consider whether discretionary immunity is a bar because we hold that the court properly granted summary judgment on the basis of the recreational use statute.

## STANDARD OF REVIEW

Our review from a summary judgment is de novo. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339 (9th Cir.1989). We must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Id.* at 1339–40.

## DISCUSSION

A party may bring an action against the United States only to the extent that the government has waived its sovereign immunity. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). The United States has waived its sovereign immunity in cases like the present one only to the extent that a private person would be liable under like circumstances. 28 U.S.C. §§ 1346(b), 2674 (1988). Our inquiry here, therefore, is limited to whether a private person would be liable for Mattice's injuries under California law. *See McMurray v. United States,* 918 F.2d 834, 836 (9th Cir.1990).

California has a recreational use statute that protects landowners and other inter-

est-holders (landowners) from liability for negligence to those who enter or use their land for recreational purposes. It provides in part:

> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

Cal.Civil Code § 846. Mattice contends that the recreational use statute does not apply because (1) she was not engaged in a recreational activity; (2) the accident occurred on a paved, public road; and (3) the government's conduct was willful. We address each in turn.

## 1. Recreational Purpose

Mattice argues that she was not engaging in a recreational activity at the time of the accident, but was taking a test drive in preparation for heading home. Section 846 does not require that a plaintiff be engaged in a recreational activity at the time of the accident. The plain language states that a landowner "owes no duty of care to keep the premises safe *for entry* or use by others for any recreational purpose." (Emphasis added). Thus, the statute applies to injuries sustained while a plaintiff travels within the property as long as the plaintiff's purpose in entering the property was recreational. *See Smith v. Scrap Disposal Corp.*, 158 Cal.Rptr. 134, 136, 96 Cal.App.3d 525 (1979) (question of fact why the plaintiff entered the property). Any other interpretation would be inconsistent with the legislative intent of encouraging landowners to open their property to the public for recreation. *See Hubbard v. Brown*, 266 Cal.Rptr. 491, 492–93, 50 Cal.3d. 189 (1990). A landowner whose recreational lure lay any distance from the property boundaries would receive little protection from a statute that protected them only once people reached the recreational spot and began the recreational activity.

Mattice entered the park for a recreational purpose. Section 846 broadly defines "recreational purpose" to include "picnicking," and "viewing or enjoying ... scenic, natural, or scientific sites." Cal.Civil Code § 846. Mattice came to the park to congregate with friends at a picnic area. That activity clearly falls within the scope of the statute.

## 2. Paved, Public Road

Mattice argues that the statute does not apply to paved and public federal roads. There is no question that the statute applies to public federal roads on recreational land. We recently applied section 846 to a Forest Service road in the Angeles National Forest, *Termini v. United States*, 963 F.2d 1264, 1265–66 (9th Cir.1992), and the California Supreme Court recently applied it to a Forest Service road in the El Dorado National Forest, *Hubbard*, 266 Cal.Rptr. at 492. *See also O'Neal v. United States*, 814 F.2d 1285 (9th Cir.1987) (applying Oregon recreational use statute to a logging road on Bureau of Land Management land).

The rule is no different here because the road is paved. The statute does not make an exception for paved roads or, more generally, improved property. To the contrary, the California Supreme Court has stated that the statute is not limited to land in its natural state—"it obviously encompasses improved streets." *Delta Farms Reclamation Dist. No. 2028 v. Superior Court*, 190 Cal.Rptr. 494, 499, 660 P.2d 1168, 1173, 33 Cal.3d 699, *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983) (holding section 846 inapplicable to state and local public entities because a more specific California provision addresses public liability).

We addressed a similar argument in *Palmer v. United States*, 945 F.2d 1134, 1137 (9th Cir.1991). There the plaintiff contended that the landowner, the United States, voluntarily assumed a duty of care by maintaining a swimming pool and providing lifeguards. We responded that nothing in Hawaii's recreational use statute indicated that it only applied to land-

owners who failed to take any safety measures. *Id.* Indeed we recognized that such a rule would serve only to discourage safety improvements. *Id.* at 1138. The same rationale applies to the California statute; the landowner here should not be penalized for taking the precaution of paving a park road.

Mattice argues that applying the statute to paved, public roads leads to absurd results. She relies for support on *Seyler v. United States*, 832 F.2d 120 (9th Cir.1987). There the plaintiff was injured while riding his motorcycle for recreation on a federal highway. Idaho's recreational statute expressly included roads within its scope, and the government argued that the statute applied to any road or highway in Idaho. *Id.* at 122. We held that it would be absurd to apply the statute to an ordinary highway. *Id.* An ordinary highway is not a recreational area, and the intent of the statute would be ill-served by applying it to one. *Id.*

The California statute is not that far-reaching, on its face or as applied here. Section 846 applies only to "premises." "[T]he word 'premises' means a tract of land suitable for recreation." *Mansion v. United States*, 945 F.2d 1115, 1118 (9th Cir.1991). California courts have refused to apply the statute to areas where entry for recreation should not be encouraged. *See, e.g., Domingue v. Presley of Southern California*, 243 Cal.Rptr. 312, 316, 318, 197 Cal.App.3d. 1060 (1988) (statute inapplicable to construction site). Here, the "premises" is a national park, a tract of land ideally suited for recreation. Application of the statute in this situation is not absurd because it will encourage the government to keep park land open for recreational use. *See Jones v. United States*, 693 F.2d 1299, 1302 (9th Cir.1982). As the California Supreme Court stated, "Although [the road] is publicly owned and evidently already open to the public for recreational purposes, it does not follow that application of section 846 would fail to serve a legislative purpose." *Hubbard*, 266 Cal.Rptr. at 495. The government is protected from liability for negligence by the recreational use statute.

Mattice argues for the first time on appeal that the application of section 846 in this context violates the equal protection clause because it treats recreational motorists differently than nonrecreational motorists. We have discretion to consider this argument although it was not raised below. *See Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir.1984). A similar argument was made in *Simpson v. United States*, 652 F.2d 831, 833 (9th Cir.1981). We held that section 846 bears a rational relationship to a legitimate state interest: the opening of property to the public for recreational use. *Id.* That same reasoning applies here.

3. **Willful or Malicious Failure to Warn or Guard against Danger**

Section 846 does not provide immunity "for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." Cal.Civil Code § 846. To establish willful misconduct under California law, a plaintiff must show that the defendant: (1) had actual or constructive knowledge of the peril; (2) had actual or constructive knowledge that injury was probable, as opposed to possible; and (3) consciously failed to act to avoid the danger. *Termini*, at 1267. The district court determined that Mattice failed to offer any evidence of willfulness.

Mattice argues that the first and second elements are established by the admission of the government that the risk was obvious. That evidence, however, is a double-edged sword. The United States asserts that the risk was inherent in mountainous driving and would be obvious to anyone. It argues that park employees had no reason to think that drivers would not take the geographic conditions into account when driving the winding road.

The argument by the United States is persuasive. The cases in which we have upheld a claim of willful misconduct under California law have all involved a hidden peril. For example, in *Termini* the Forest Service built a road that ended at a cliff. At 1265. The road followed a steady in-

cline, and drivers could not see the road's abrupt end until reaching a crest forty feet from the precipice. We carefully distinguished between the inherent danger of the canyon roads and the hidden danger of that particular spur. *Id.* at 1268. "The likelihood of an individual actually driving over the cliff speaks to the probability of injury because of the cliff's unmarked presence, not to the inherently dangerous nature of the cliff in the first instance." *Id.* at 1267. *See also Rost v. United States*, 803 F.2d 448, 451 (9th Cir.1986) (gate post that impaled vehicle passenger was camouflaged); *Simpson*, 652 F.2d at 834 (plaintiff not warned that bank might collapse and plunge visitor into scalding water).

Mattice argues that the nine accidents in ten years on Enderts Beach Road showed that park employees knew that a danger existed. We disagree. In *Spires v. United States*, 805 F.2d 832 (9th Cir.1986), the plaintiff fell into a ditch caused by flow from the storm sewer. We held that the plaintiff did not establish that the government had actual or constructive knowledge of the ditch. *Id.* at 834. It was insufficient to show that the government employees knew that occasional ditches occur. *Id.* Similarly here, the nine accidents on Enderts Beach Road do not establish that the government should have known that the curve by the overlook was dangerous. None of the accidents occurred near the overlook. Moreover, Mattice has not shown any pattern at all from the accidents other than that they were on Enderts Beach Road. One of the accidents occurred where the road was level, one occurred because of poor brakes, two involved drinking, one involved a distracted driver, and four involved vehicles travelling at excess speeds. Apparently, none of the accidents involved vehicles breaking through the guardrail or resulted in serious injury.

Mattice also relies on evidence that the guardrail where the accident occurred had been hit before. A park employee testified that on several occasions he noticed damage to the guardrail that appeared to have been caused by a vehicle. None of the vehicles went through the guardrail, however, and there is no evidence that anyone was injured. Mattice's evidence does not establish a question of fact whether the government knew the curve was dangerous and probably would cause injury.

Mattice has not offered evidence to establish that the government consciously failed to act to avoid the danger either. The undisputed evidence is that the government placed a sign at the base of the hill warning that the road is winding and advising a speed of 15 miles per hour. Another sign 50 feet farther up indicated multiple curves ahead. Additionally, the guardrail had some reflectors on it. Mattice argues that the government failed to install steel guardrails, additional reflectors, a sign right before the curve and a permanent shoulder and center line. The government's failure to do those things, at most, would constitute negligence. The trial court properly granted summary judgment.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I dissent because I am in basic disagreement with the majority on all three grounds of its opinion.[1] Part of this disagreement stems from a difference in the way we characterize Enderts Beach Road. I view Enderts Beach Road as akin to an

---

1. The majority does not reach the issue whether Mattice's claim is barred by the discretionary function exception to the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(a) (1988). Because I believe the district court erred in granting summary judgment for the government, I would reach this issue. Whether the decision to use redwood for the guardrail falls within the discretionary function exception under these circumstances is not clear. However, we have consistently held that the government's failure to post warning signs regarding dangerous conditions or obstacles on government property is not the type of judgment that the discretionary function exception was designed to shield. Our decisions in "failure to warn" cases dictate a conclusion that failing to adequately stripe, sign, reflectorize, and guardrail Enderts Beach Road at Crescent Beach Overlook does not fall within the exception. *See, e.g., Summers v. United States*, 905 F.2d 1212 (9th Cir.1990); *Seyler v. United States*, 832 F.2d 120 (9th Cir.1987); *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir.1987).

ordinary street or highway, and not as the part of Redwood National Park that is used for recreation. It seems to me that the other members of the panel take the opposite view.

### A.

Enderts Beach Road is a paved, two-lane road, most of which is owned by the federal government's Redwood National Park in Del Norte County, California. Each lane is a standard twelve feet in width. The roadway was originally constructed by the State of California in 1919 and relinquished to Del Norte County in 1933. It was taken over by the United States government when the government acquired Redwood National Park in 1973. The federal government is responsible for the maintenance, operation, and repair of the road. According to park employees, it is the main thoroughfare in Redwood National Park.

The road ventures off from California Highway 101, runs through a private residential area, and continues into Redwood National Park. Nothing in the appearance of the road puts the user on notice that it would be subject to Cal.Civ.Code § 846. Most importantly, it has all of the characteristics of an ordinary street or road and provides no indication that it is not continually maintained in a reasonably safe manner. Thus, Enderts Beach Road differs markedly from a paved road intended for recreational use or from an unpaved road which drivers would not expect to be free from unknown dangers.

The purpose of § 846 is to "encourage property owners to allow the general public to recreate free of charge on *privately owned* property" by limiting potential tort liability for injuries sustained by recreational users. *Hubbard v. Brown,* 50 Cal.3d 189, 193, 266 Cal.Rptr. 491 (1990) (emphasis added). The Federal Tort Claims Act ("FTCA") makes the federal government liable to the same extent as a private indi-

vidual under like circumstances. 28 U.S.C. § 2674; *Simpson v. United States,* 652 F.2d 831, 833 (9th Cir.1981). However, the rationale underlying § 846—to encourage the opening up of private property to recreational use—is not as strong when applied to the federal government. The federal government has an independent statutory duty to open up park and forest lands for enjoyment by the general public.[2] 16 U.S.C. § 1 (1988) (creating in the Interior Department a National Park Service to promote and regulate national parks, monuments, and reservations for public benefit and enjoyment).

Of course, the federal government would be hard pressed to assure safe conditions on every foot of the vast areas of national parks and forests for individuals engaging in recreational activities entailing some risk. Moreover, part of the enjoyment of these lands is to view them in their natural, untamed condition. Under these circumstances, § 846 serves its purpose. Thus, we have found that the immunity provided by state recreational use statutes, such as § 846, applies to the federal government in situations where the plaintiff had engaged in a recreational activity on federal property used for recreational purposes. *See, e.g., O'Neal v. United States,* 814 F.2d 1285 (9th Cir.1987) (collapse of logging road during hunting expedition); *Proud v. United States,* 723 F.2d 705 (9th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984) (diving accident in national park); *Jones v. United States,* 693 F.2d 1299 (9th Cir.1982) (innertubing accident on ski slope); *Simpson,* 652 F.2d 831 (collapse of peninsula ground tossed plaintiff into natural hot water pool in national forest).

California's Recreational Use Statute provides: "[A landowner] owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose

---

**2.** There is no evidence to suggest that the federal government ever considered closing these areas should immunity under recreational use statutes be denied. Paul A. Svoboda, Note, *Protecting Visitors to National Recreation Areas Under the Federal Tort Claims Act,* 84 Colum.L.Rev. 1792, 1800–01 (1984). Additionally, the government opened several new recreational areas prior to the enactment of most recreational use legislation, when its liability was determined under the stricter public invitee standard. *Id.* at 1801.

or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose...." Cal.Civ.Code § 846 (West 1982). For purposes of this statute, "premises" has been defined as "a tract of land suitable for recreation." *Mansion v. United States*, 945 F.2d 1115, 1118 (9th Cir. 1991) (citing *Colvin v. Southern Cal. Edison Co.*, 194 Cal.App.3d 1306, 1314, 240 Cal.Rptr. 142 (1987)).

The majority's analysis extends the immunity provided by § 846 to those areas that *lead to* property suitable for recreational purposes. Enderts Beach Road provides access to Redwood National Park, property that is suitable for recreational purposes. I part company with the majority because I believe that a paved, federally-owned, public road that is an extension of the area's highway system presents a situation entirely different from a road used as part of the recreational activity. *See Seyler v. United States*, 832 F.2d 120, 122 (9th Cir.1987) ("To apply the recreational use statute to the ordinary street or highway ignores the purpose of the statute, which is ... to open land to the public that would otherwise be closed to it."). The manner in which Enderts Beach Road is paved, marked, striped, and lighted tells the user that it is a reasonably well-maintained road. It engenders reliance. I would not include Enderts Beach Road within the "premises" subject to § 846 immunity. Accordingly, I would hold that the protection of § 846 is not available to the federal government through the provisions of the FTCA when the alleged negligence is failing to maintain adequately a paved, public road that engenders reliance by giving all the appearances of an ordinary street or highway, including universally recognized stripes, road signs, and reflectorized markings.

## B.

I also disagree with the majority that transportation within the property to and from a recreational activity is always encompassed within the term "recreational purpose" of § 846. The statute states that a landowner "owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose." Cal.Civ. Code § 846.

The government does not contend that Mattice's driving constituted recreational activity; rather, it was her previous picnicking that provides the relevant recreational link. The question thus is whether Mattice's driving on her way home is sufficiently related to her earlier picnicking activity to come within the immunity afforded by § 846. I do not think it is.

Mattice's intent in driving on Enderts Beach Road that night was to return home. She had left the recreational portion of Redwood National Park. Enderts Beach Road appeared to be an ordinary road. Under these circumstances, I would conclude that Mattice was not engaged in a recreational activity at the time of her accident.

*Smith v. Scrap Disposal Corp.*, 96 Cal. App.3d 525, 158 Cal.Rptr. 134 (1979), cited by the majority, is not dispositive. Smith suffered injuries while engaging in allegedly recreational activity—playing on a bulldozer—not while en route to or from that activity. The factual question was whether Smith had indeed entered the property to play on the bulldozer (a recreational activity) or whether he was attempting to rescue his friend who was playing on the bulldozer (a nonrecreational activity). *Id.* at 528, 158 Cal.Rptr. 134. Dictum in *Smith*, in fact, supports Mattice's position. The court stated: "If plaintiff had been driving on a public thoroughfare returning from a fishing trip and stopped to go across Scrap's land for a non-recreational purpose, Scrap's present argument would be unavailing. The underlying purpose of the trip could not be used to shield it from liability." *Id.* at 529, 158 Cal.Rptr. 134. Mattice, similarly, was on a public thoroughfare, and not engaged in a recreational activity at the time of her accident. Thus, her previous picnicking should not serve to bring her within § 846 immunity.

In some situations, I would agree with the majority that transportation within property falls within the protection afforded by § 846. These are situations where

the portions travelled upon give no indication that they are being adequately maintained. Here, however, I would disassociate Mattice's test drive from her earlier picnicking activity.

### C.

I further disagree with the majority that Mattice failed to raise genuine issues of material fact to establish an exception to application of California's Recreational Use Statute. Even if § 846 is otherwise applicable, liability may still attach through the exception for a "willful or malicious failure to guard or warn against a dangerous condition." Cal.Civ.Code § 846. Under California law, a negligent act or omission is raised to the level of willful misconduct if the following essential elements are shown: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of danger, and (3) conscious failure to act to avoid the peril." *Morgan v. Southern Pacific Transportation Co.*, 37 Cal.App.3d 1006, 1012, 112 Cal.Rptr. 695 (1974).

The government had actual knowledge of the peril posed by the conditions at Crescent Beach Overlook. The inherent danger is evident from the location of the guardrail—above a 350 foot drop into the rocks and ocean below. *See Termini v. United States*, 963 F.2d 1264, 1267 (9th Cir.1992) ("Common sense dictates that a precipice at the end of a road constitutes a peril to be apprehended."). Impact with the guardrail, alone, is likely to cause serious injury. The government does not contest that it was responsible for maintaining and repairing Enderts Beach Road, and placement of the guardrail indicates that the National Park Service knew of the steep drop off the overlook.

The government also had actual or constructive knowledge of probable injury as a result of the danger through the nine reports of accidents in the vicinity over the ten years preceding Mattice's accident. *See Von Tagen v. United States*, 557 F.Supp. 256, 260 (N.D.Cal.1983) (evidence of prior accidents is also useful "in evaluat-

ing the government's knowledge of the probability of injury"). Additionally, Norman Blair, the North District Ranger at Redwood National Park, was aware that the redwood guardrail, itself, had been repaired due to vehicle impact. Further, Mattice submitted a declaration from David Henry, a former State of California Traffic Engineer. Henry declared that the combination of factors such as lack of a center stripe, lack of shoulder stripes, lack of reflectors, lack of curve warning signs near the curve, and lack of an adequate guardrail comprised a trap leading motorists driving at night to head straight for the cliff in the vicinity of the guardrail.

The government admits that the dangerous condition of the road was obvious. Nevertheless, it claims that government personnel did not actually know of the danger because reasonable drivers would be aware of the obviously dangerous geography and drive with caution. I find this reasoning untenable, especially in light of park employee testimony that conditions such as fog and darkness made the road difficult to navigate.

This theory of "obviousness" was argued in *Judd v. United States*, 650 F.Supp. 1503 (S.D.Cal.1987). The present case is distinguishable from *Judd*, however. In *Judd*, the district court concluded that the geography of the area would not lead a reasonable person to believe that a 35 foot swan dive into a small pool would be attempted in light of the visibly rocky bottom. *Id.* at 1512. "The risk is too obvious to a potential diver." *Id.* Here, a reasonable person would not necessarily know the road conditions ahead, especially in darkness. *Judd* is further distinguishable because National Forest personnel had no knowledge that anyone had ever dove from that height although they knew that people swam in the pool and dove from low heights. In the present case, if the accident reports from surrounding areas were not sufficient to establish NPS' actual or constructive knowledge of the peril, the impacts on the guardrail certainly were.

I find unavailing the government's contention that it lacked knowledge of the

 

probability of injury because no one had ever driven off Enderts Beach Road at Crescent Beach Overlook. *See Termini,* at 1269 (rejecting same reasoning and citing California cases doing same). I also find untenable Norman Blair's statement that it would have taken a fatality at that particular location to call his attention to the need for a sturdier guardrail. *See* Appellee's Supplemental Excerpts of Record at 78.

Conscious failure to act is established by Blair's failure to upgrade the guardrail in light of the vehicle impacts upon it and of his knowledge that the redwood was not adequate to prevent cars from going over the cliff. Additionally, Blair had recommended improvements to the conditions of the road, including striping on the portion of Enderts Beach Road near Crescent Beach Overlook. Blair testified that fog (shoulder) stripes were needed to indicate the location of the right portion of the road because it was especially difficult to see during periods of fog and darkness. No action was taken for several years, until after Mattice's accident. At the time of the accident, there were no shoulder stripes, reflectorized pavement markers to warn of the edge of the pavement, or painted center line separations on the roadway in that area. The presence of reflectors on the guardrail is disputed. Certainly, the evidence presented by Mattice is sufficient to raise genuine issues of material fact on each of the three elements to preclude summary judgment.

"When willfulness is an issue, summary judgment should be granted with caution, since questions such as intent or motive are presented." *Simpson,* 652 F.2d at 834. In *Simpson,* the plaintiff was injured when the ground gave way and he was tossed into a scalding hot water pool. We reversed the trial court's grant of summary judgment in favor of the government because the dispute over the type of warnings given raised a material issue of fact as to "[w]hether the efforts of the United States were so feeble as to rise to the level of willfulness." *Id.*

The facts of the present case establish, at the very least, that Mattice has raised genuine issues of material fact to establish the exception for willful misconduct. Summary judgment was therefore inappropriate. I would reverse the district court's judgment and remand for a trial.