**William J. GRIPPO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–N–93–366–HDM.**

United States District Court,
D. Nevada.

Aug. 31, 1995.

Plaintiffs attached the document to their moving papers simply to avoid any confusion.

438

Shirley Smith, Assistant U.S. Attorney, Reno, NV, for plaintiff.

Ronald F. Cauley, Gardnerville, NV, for defendant.

### DECISION

McKIBBEN, District Judge.

■ The plaintiff, WILLIAM GRIPPO, commenced this action to recover under the Federal Tort Claims Act (FTCA), 28 U.S.C. Section 1346(b) and 2671 *et seq.* The FTCA is a limited conditional surrender of the sovereign immunity of the United States. The United States, as a sovereign, is immune from suit except to the extent that it consents to be sued.

The action is for personal injuries which Grippo sustained when he fell into a pool of scalding water at the Hot Creek Geothermal Area in the Mammoth Ranger District, the Inyo National Forest, located at Mammoth Lakes in Mono County, California.

The Hot Creek Geothermal Area, (hereafter Hot Creek), is a recreational site that has been developed by the Forest Service. At no time prior to, at the time of, or after the injury has the Forest Service ever charged for the use of this area. There was no express invitation offered to the public to go to that site. In fact, the evidence that was adduced during the trial indicates the contrary.

The site is managed by the Forest Service and it is an integral part of an interpretive site. The principal goal and objective of the expansion and development of this site is to protect and interpret certain geologic features in the area. Because a hot spring is present, people are attracted to it and want to bathe in it. The water flowing in the creek is cold but once it gets to the hot spring it warms quickly and can reach boiling temperature. Visitors in the area have soaked in the creek for close to a hundred years for the therapeutic benefits, but there is no evidence that they have been solicited by the Forest Service to go to that area.

The Forest Service tolerates soaking in the creek where not otherwise prohibited. The Forest Service publications and signs posted at the site expressly warn visitors about the dangers of scalding water and discourages visitors from entering the water.

At the time of the accident on May 24, 1991, there was a Forest Service Order in effect known as 0490–01, which, under 36 C.F.R. Section 261.50, prohibited entering any fenced area or enclosure which was posted closed for the protection of public health and safety. The order also prohibited entry into the area from sunset to sunrise. Hot Creek had been closed from sunset to sunrise since 1979 and had been clearly posted since that time in several places and in very conspicuous spots for the traveling public. The area is patrolled regularly by the Forest Service law enforcement personnel and the Mono County Sheriff's Office. At the time of the accident the area was posted with many

prominent signs warning of dangers and notifying the public that the area is closed after dark. In fact, the evidence established that there are a number of signs totaling approximately fifty which give varying degrees of warning about the potential hazards in that area.

On May 24, 1991 the plaintiff and a friend of his, James Kelly, had been attending some celebrations in the Bishop area known as Mule Days. They had gone to dinner, and then proceeded to travel to Hot Creek. They were both familiar with the area. It had been some time since either one of them had visited the area, but they clearly had been there before. They had bathed in Hot Creek. They knew about the area, and both of them knew that it was closed to the public after dark. The reasonable inference the Court draws from the evidence, in addition is that it was common knowledge in the area that Hot Creek was posted and closed after sundown.

The area that evening was illuminated by moonlight. Mr. Kelly testified that the weather was clear and visibility good. The warning signs were clearly visible. In fact, some of them were painted with reflective material to make them more visible at night.

The area around the pool into which plaintiff fell was enclosed with temporary warning barriers and posted as closed to the public. On December 9, 1990, a supervisor from the Forest Service installed temporary barriers using heavy taping at the west end of the footbridge blocking access to the pool. It is known as the December pool because that was when it was first observed. The patrols by the Forest Service personnel checked the barriers regularly to make certain that they were in place until permanent fencing was installed in the summer of 1991.

The accident in question occurred at approximately 10:30 p.m., perhaps a little later. The plaintiff was admitted to the hospital at 12:50 a.m., approximately two hours and twenty minutes later. That is an excessive amount of time to traverse the nine miles which normally could be driven in thirty minutes or less. The evidence supports a finding that some alcohol was consumed by the plaintiff prior to the time of the incident.

It is possible and likely that he did take some alcohol afterwards as well because he had to be in severe pain.

Near the top of the pedestrian walkway leading to Hot Creek there was a large sign stating:

"DANGERS OF HOT CREEK. Twelve people have lost their lives in Hot Creek since 1968. Many more have been seriously injured. Some of the hazards are scalding water, broken glass, arsenic in the water, sporadic high pollution, sudden temperature changes, unpredictable eruptions, unstable ground. It is recommended that you remain on paved and wood paths and do not enter the water. Some of the more dangerous areas are fenced, however, new hazards are a constant threat. Please use extreme caution."

This sign could not possibly have been missed by the plaintiff. In addition, when the plaintiff and his friend parked, they consciously parked in a nonpaved area because they were concerned that the gate could be closed and that they would be unable to exit later. That was a conscious decision that clearly indicates to the court that the plaintiff and his friend knew that they were not supposed to be in that area at the time that they were there.

The second sign which is on the walkway and also clearly visible to the plaintiff, had the following language:

"DANGEROUS AREA. Scalding water, unpredictable eruptions, unstable ground, sporadic high pollution, sudden temperature changes, broken glass, arsenic in the water. We recommend that you remain on paved and wood paths and do not enter."

In addition, clearly visible in at least two prominent places along the roadway and pathway leading to where the car was parked, there were signs that indicated that it was unlawful to go in after sunset and that this area was closed, saying "Hot Creek closed sunset to sunrise."

There were a significant number of signs that were clearly visible and clearly indicated to the plaintiff and to anyone else similarly situated that this was a very hazardous area,

and that extreme caution had to be used. The Forest Service used great caution in placing as many signs as were placed in that area to warn the public.

■ Under 28 U.S.C. Section 1346(b), the Federal Tort Claims Act, the United States is liable in tort to the same extent as a private individual under the law of the place where an injury occurs. *Termini v. U.S.A.*, 963 F.2d 1264 at 1265 and 1266 (9th Cir. 1992). Therefore, if, under California law, suit could not be brought against a private individual for improper culpable conduct, then the cause of action may not be maintained against the United States.

The critical statute in this case is California's Recreational Use Immunity statute found at Section 846 of the California Civil Code which provides private landowners with a substantial measure of immunity from liability for injuries incurred by those entering or using their land for recreational purposes.

The statute specifically provides in part:

"An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warnings of dangerous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this action.

A 'recreational purpose,' as used in this section, includes such activities as ... water sports ...

An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purposes upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.
Nothing in this section creates a duty of care or ground of liability for injury to person or property."
Cal.Civ.Code 846 (West Cumm.Supp.1992).

The area is posted with notices that it is closed after sunset. No Forest Service officer or employee invited plaintiff or his friend to visit the site. There is no evidence that the Forest Service expressly invited the plaintiff to come on the premises. In fact, when the plaintiff was there in the late evening hours, he was a trespasser. The regulation and the warning signs clearly provided that after sunset it was a violation of law for the plaintiff, or anyone else, to be in that area.

■ Although the California Supreme Court has not spoken to the precise issue, the Ninth Circuit has adopted a California appellate court test to determine whether a landowner's conduct is willful or malicious as set forth under Section 846. To establish willful misconduct under California law a plaintiff must establish that the defendant had actual or constructive knowledge of the peril, knew that injury was probable as opposed to possible, and consciously failed to act to avoid the danger.

The major issue in this case is whether or not the United States' actions constitute willful or malicious failure to guard against probable injury. The plaintiff's contention is that the United States' efforts at guarding the December pool were inadequate. Specifically, and this is the basis on which the court denied summary judgment in this case, the plaintiff contends that there were no barricades in place and there was no tape around

the hot pool, the December pool, at the time of the accident.

Alternatively the plaintiff argues that the defendant in any event should have put up effective signs that would clearly communicate the danger specifically in that area or put up fencing around the area that would have adequately prevented members of the public from going into that specific area, or perhaps placed more barriers or barricades in the area indicating that the pool was off limits.

Three barricades were placed in that area on December 9, 1990, connected by yellow tape. This is distinctive warning tape which was clearly visible. The tape could not physically prevent anyone who was intent on going into the area but it was a clear notice to the public to remain out of the area because of the grave danger.

The ground at Hot Creek is extremely unstable and hot pools appear and disappear at irregular intervals. The Forest Service made a judgment that it was not practical to put a fence up at that point and then to have to go back repeatedly and move the fence. This court cannot conclude that that judgment constituted willful or malicious conduct on the part of the Forest Service.

There is substantial evidence that those barricades were there within a twelve-hour period after the incident and within a twelve-hour period prior to the incident. It is therefore reasonable to conclude that they were there at the time of the incident in question. The United States' failure to put up more substantial barricades does not amount to willful or malicious conduct.

The United States had actual knowledge of the danger posed by the December pool so the first element has been established.

It cannot be said that the United States consciously failed to guard against the hazard posed by the December pool because the barricades were placed there around that pool with the tape immediately after the hazardous condition was detected by the Forest Service. These, of course, were warnings that were in addition to the general warnings that existed in the entire area.

No one, and particularly an adult, could go into that area without knowing that there were grave dangers wherever you walked except in those areas where it was actually paved. With the yellow tape and the barricades in place, the plaintiff could reasonably conclude that it was highly probable that injury would occur in the area.

The court concludes that it was reasonable for the government to expect that members of the public would assume that an area cordoned off with yellow tape and barricades was a threat to their safety and would not traverse that area. Furthermore, the plaintiff had been in this area, and was aware of the potential hazards in the area. It was nighttime, and plaintiff reasonably should have understood that he was a trespasser.

The Hot Creek area had been used for many years by bathers with few incidents of injury to adults or children and therefore, it was not probable that injury would occur if the warnings were observed. In fact, the evidence established that between 1968 and 1991 there were a total of eighteen accidents in that area. Eight of those were burn injuries. There were approximately 116,000 visitors per year at Hot Creek, and that equates to approximately one accident for every 149,000 visitors.

It is not reasonable under the circumstances to guard against any form of accident. As was held by the *Mattice v. United States* court at 969 F.2d 818, 822 (9th Cir. 1992), "The cases in which we have upheld a claim of willful misconduct under California law have all involved a hidden peril." Here, of course, the peril was not hidden, it was quite visible because the area was illuminated by the moon, and the parties, when they traversed that area, were able to see their way. The government had expressly warned against the danger of scalding water in the entire area and had specifically prohibited entry into this area of the December pool.

As to the third factor, conscious failure to act, the court finds that the government did not consciously fail to act, in fact, the government did act. The court, therefore, concludes that the barricades and off limit signs, the general ones and the specific ones, adequately warned of the dangerous conditions.

The court finds that the means and methods employed by the government in warning and in taking steps immediately to advise the public of the dangerous conditions after they appeared at the December pool negate a finding that the government's actions were willful or malicious. Therefore, based upon these findings, the court concludes that it is unnecessary to address whether or not these functions of the United States were discretionary.

Accordingly, Judgment shall be entered in favor of the defendant UNITED STATES and against the plaintiff WILLIAM GRIPPO.

This decision shall constitute Findings of Fact and Conclusions of Law.