**Eric Austin NIVA, Plaintiff–Appellant,**

v.

**UNITED STATES BUREAU OF LAND MANAGEMENT, Defendant–Appellee.**

**No. 05–16555.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 2007.

Filed Aug. 15, 2007.

John C. Stein, Esq., The Boccardo Law Firm, San Jose, CA, B.E. Bergesen, III, Esq., Berkeley, CA, for Plaintiff–Appellant.

Chinhayi J. Coleman, Ausa, USSJ—Office of the U.S. Attorney, San Jose, CA, for Defendant–Appellee.

Before: HUG, RYMER and FISHER, Circuit Judges.

## MEMORANDUM *

■ Eric Austin Niva argues that the district court clearly erred in concluding that the United States Bureau of Land Management (BLM) is entitled to recreational use immunity under Cal. Civil Code § 846. According to Niva, the BLM had actual or constructive knowledge that injury was probable, rather than possible, as a result of the unfilled ditch on Clear Creek Road (CCR). We agree. Accordingly, we reverse the district court and remand for further proceedings consistent with this decision.

The district court treated the lack of prior accidents on the relevant stretch of CCR as close to dispositive, beginning and ending its discussion of the likelihood of injury with this point. Both our own and California's precedents, however, make clear that the lack of prior accidents, while probative, is not the end of the matter. *See, e.g., Termini v. United States,* 963 F.2d 1264, 1269 (9th Cir.1992) ("We ... reject the United States' argument that it lacked constructive knowledge ... because no accidents had previously occurred there."); *Isaacs v. Huntington Mem'l Hosp.,* 38 Cal.3d 112, 125, 211 Cal.Rptr. 356, 695 P.2d 653 (1985) (criticizing rule of no liability until one accident has occurred because it "discourag[es] landowners from taking adequate measures to protect premises which they know are dangerous" and "contravenes the policy of preventing future harm"). The other factors the district court cited have little force. First, although there was conflicting testimony about whether the ditch was located on the traveled portion of the roadway, there was no dispute that the road was about 20 feet wide immediately before and after the ditch, but only 10–12 feet wide at the site of the ditch. A driver proceeding on the right-hand side of the road would thus have had to take some action to avoid hitting the ditch. Second, while the BLM did not fail to comply with any safety regulations given that there *were* no such regulations for the maintenance of non-BLM roads, the BLM *did* disregard Pacific Watershed Associates' erosion control recommendations and its duty to maintain CCR, as discussed below. Finally, the details of Niva's own accident, such as the trajectory of his vehicle, shed no light on the general dangerousness of the ditch.

On the other hand, the court ignored Niva's most powerful argument for why the ditch constituted a "hidden peril" rather than an obvious danger of the sort at

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

issue in *Mattice v. United States*, 969 F.2d 818 (9th Cir.1992). It is undisputed that the ditch was located 35–40 feet after the crest of a hill, and hence was visible to a driver only after he had reached that crest. According to Niva's expert, Webber, a driver with average reflexes who was going at the 25 mph speed limit would have traveled 57 feet before being able to perceive and react to the ditch. A driver proceeding at 20 mph would also have been unable to respond in time to the ditch, as would drivers with below-average reflexes going even more slowly. The inevitable implication of Webber's testimony—which the district court elsewhere characterized as "very credible and thoughtful"—is that it was only a matter of time before someone was injured by the ditch. Of course, injury was not *inevitable* for drivers on CCR; most people presumably drove slowly enough or far enough left on the road that they avoided the ditch, or were not harmed if their vehicles did hit the ditch. But the ditch's size and location did make it *probable* that some unlucky driver would both hit the ditch and suffer an injury as a result. *See Termini*, 963 F.2d at 1268 (evaluating likelihood of injury not just for reasonable drivers but also for drivers with reduced concentration or dealing with poor weather or equipment problems). We therefore hold that the district court clearly erred in concluding that the BLM is entitled to recreational use immunity.

■ Accordingly, we also address the BLM's arguments that it had no duty to maintain CCR and that the discretionary function exception to the Federal Tort Claims Act applies. We agree with the district court that the BLM incurred a duty to maintain CCR. It carried out maintenance activities on the road from 1995 through the date of the accident, and repeatedly expressed in writing its intention to take responsibility for the road's maintenance. The 1995 Recurring and Corrective Maintenance Protocol, in particular, stated that even if San Benito County retained its easement in CCR, the road nevertheless "would be maintained according to the [Protocol's] guidelines." *Cf. Alcaraz v. Vece*, 14 Cal.4th 1149, 1170, 60 Cal. Rptr.2d 448, 929 P.2d 1239 (1997) (party that *controls* strip of land, as opposed to party that *owns* it, incurs duty of care); *McManus v. Sequoyah Land Assocs.*, 240 Cal.App.2d 348, 356, 49 Cal.Rptr. 592 (Dist.Ct.App.1966) ("contractual obligation[s]" can make owner of surrounding land, rather than owner of easement, responsible for easement's maintenance).

■ For similar reasons, we reject the BLM's invocation of the discretionary function exception. Once the BLM incurred a duty to maintain CCR, it had no discretion not to repair the ditch—a safety hazard of which it was undisputably aware. *See Soldano v. United States*, 453 F.3d 1140, 1146 (9th Cir.2006) (discretionary function exception inapplicable "where the challenged governmental activity involves safety considerations under an established policy"); *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir.1987) (failure to maintain road "which had eroded from an original width of twenty-eight feet to a width of 14.6 feet at the accident site" not covered by discretionary function exception). The BLM's alleged national policy against expending BLM funds on the maintenance of non-BLM roads does not alter our conclusion. The local BLM office's actions and written commitments were plainly inconsistent with this putative policy, and Maintenance Director Slibsager testified that the ban on using BLM funds applied only in the *absence* of "an agreement or other document in writing" and that most maintenance projects received

30–40 percent of their funding from the BLM.

**REVERSED; REMANDED.**

RYMER, Circuit Judge, concurring:

I concur in the judgment because the magistrate judge failed to take account of the opinion of Niva's expert, which was otherwise credited, that the peril was hidden. This settles the issue for immunity purposes, but not for purposes of trial on the merits. A trier of fact could well conclude in light of all the evidence that the expert's opinion is illogical given that the ditch had existed for quite some time yet no other incidents had occurred.