UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JERRY W. FESMIRE, Administrator of
the Estate of Kristina Dawn
Fesmire,
                *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
                *Defendant-Appellee,*                     No. 00-1310

v.

PATRICIA HOOP, Administratrix of
the Estate of Norman Hoop, III,
deceased,
                *Third Party Defendant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CA-98-108-4-H)

Argued: April 6, 2001

Decided: May 24, 2001

Before WILKINSON, Chief Judge, and NIEMEYER and
MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** L. Patten Mason, MASON & MASON, P.A., Morehead
City, North Carolina, for Appellant. Rudolf A. Renfer, Jr., Assistant

United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Barbara D. Kocher, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Shortly after midnight on December 23, 1996, Norman Hoop, driving his Jeep Grand Cherokee with three teenaged female passengers on a joyride over the sand dunes in Carteret County, North Carolina, drove onto federal property and accidently proceeded down a steep Navy boat ramp, plunging into the ocean. While two of the passengers survived the accident, Hoop and Kristina Fesmire died. Proceeding under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, the Estate of Fesmire sued the United States, the owner of the property, asserting that its conduct in creating the hazard and failing to give warnings about it was "willful and wanton." The district court granted the United States summary judgment, and we affirm.

The Navy facility, where the accident occurred, is at the end of a peninsula, most of which is owned by the State of North Carolina. At the borderline of the State's property, the road down the center of the peninsula is blocked by a gate — which is kept locked — and a chain link fence. The road continues beyond the gate and chain link fence down the peninsula and ends at the beginning of federal property, where there is another fence, a gate, and a small gate house. On the fence, to the right of the gate, are two signs, which read, "No Trespassing" and "Keep Out." On the night of the accident, the gate to the federal property was open and had been for some time. Beyond the gate on federal property is a large concrete pad, about 350 feet deep,

that leads to a steeply inclined boat ramp, 31 feet in length. The ramp is neither lit at night nor marked with any signs.

At about 12:30 a.m. on December 23, 1996, Hoop drove on the road down the peninsula, and upon reaching the first gate, which was locked, he drove parallel to the fence over land to the beach where the fence intersected with the water. He then drove around the end of the fence back onto State property, where he took the Jeep onto the sand dunes, returning to the road shortly before it reached federal property. At the fence bordering the federal property, he drove through the open gate, across the concrete pad, and into the water. The gate, which was in need of repair, had been removed from its hinges and was lying on the ground nearby.

Fesmire's Estate sued the United States for creating a dangerous condition and failing to warn persons on federal property of its presence. The Estate asserts that the United States was aware of a previous accident in which one of its own vehicles ran off the ramp into the water. It asserts that "[w]ith all of this knowledge[,] to then remove the gate and not replace it or provide warnings of the hazardous condition has to constitute wanton conduct — that is an intentional act done with a reckless indifference to the injuries likely to result." The Estate maintains that "the only action that the government needed to take in order to avoid this tragic loss of two young lives was to take the damaged gate, place it on the ground, straighten it with a forklift, and reinstall it on the support post."

The government's liability, if any, must be based on its waiver of sovereign immunity under the FTCA for tort liability determined in accordance with the law of the place where the tort occurs. More particularly, 28 U.S.C. § 2674 waives the United States' sovereign immunity "relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." The United States is held to the same, but no higher, standard than would be a private person acting in the locale where the tort occurred, that is, it is liable only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

In North Carolina, where the alleged tort occurred, landowners owe a duty to refrain from willful and wanton injury to trespassers. *See*

*Nelson v. Freeland*, 507 S.E.2d 882, 892 (N.C. 1998). "Wantonness" is defined as an act "performed intentionally with a reckless indifference to the injuries likely to result. 'Willful or intentional negligence is something distinct from mere carelessness and inattention, however gross.'" *Howard v. Jackson*, 461 S.E.2d 793, 797 (N.C. Ct. App. 1995) (internal citation omitted) (quoting *Wagoner v. North Carolina R.R.*, 77 S.E.2d 701, 706 (N.C. 1953)).

In this case, the Estate contends that Fesmire was not a trespasser because her use of the property occurred with the implied knowledge of the United States, which it contends amounts to an implicit invitation to use the property. Even if the Estate is correct, however, Fesmire's use of the property was recreational, which means that the duty owed her was the same duty to refrain from willful and wanton injury that is due a trespasser. *See* N.C. Gen. Stat. § 38A-4 ("[A]n owner of land who either directly or indirectly invites or permits without charge any person to use such land for . . . recreational purposes owes the person the same duty of care that he owes a trespasser"). Thus, it is clear that, whatever Fesmire's status, the United States owed a duty to refrain from committing a willful or wanton injury. Because Fesmire's Estate admits that the injury was not willful, it must demonstrate that the United States' conduct was wanton — an act "performed intentionally with a reckless indifference to the injuries likely to result."

There are at least two reasons why Fesmire's Estate has not met its burden in this case. First, the Estate does not allege any wrongful *act*, but at most a wrongful omission or failure to act, the failure to warn. We have found no case in North Carolina which holds that the passive conduct of a landowner is deemed to be an act performed "intentionally with a reckless indifference to the injuries likely to result."

Second, even if we assume that an omission can be considered wanton misconduct under North Carolina law, it is still clear that this allegedly wrongful omission does not impose liability for which trespassers or even implicit invitees can assert a claim. North Carolina's limitation of liability statute extends the limitation of the duty owed to trespassers to direct or indirect invitees who are using the owner's property for recreation without charge. The statute does provide an exception — imposing a duty to warn of "artificial or unusual hazards

of which the owner has actual knowledge" — but this exception applies only to "*direct invitees*." *See* N.C. Gen. Stat. § 38A-4 (emphasis added). By negative implication, therefore, there is no duty to warn trespassers or indirect invitees of artificial or unusual hazards.

Fesmire's Estate claims only that Fesmire was an indirect invitee. The North Carolina legislature made a deliberate choice not to extend its exception to the trespasser rule to indirect invitees, who are mentioned earlier in the same section of the statute. Thus, the United States owed no duty to inform Fesmire of the hazardous condition either by providing lights or posting warning signs. Accordingly, the most that the Estate can do is point to the fact that the United States left its gate open. But this omission, standing alone, cannot provide evidence of wanton misconduct. We have been directed to no North Carolina law that imposes on landowners a duty to fence or gate their properties.

The accident in this case was a most unfortunate tragedy. But it was not an accident for which the United States, as landowner where the accident occurred, was liable in tort under North Carolina law. Accordingly, the judgment of the district court is

*AFFIRMED.*