The **ESTATE OF Shirley Diane LEDFORD, By and Through Administrator Michael Ira JARNIGAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. 1:03CV160.**

United States District Court, W.D. North Carolina. Asheville Division.

Feb. 11, 2004.

W. Perry Fisher, II, Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, NC, Hugh P. Taylor, White Pine, TN, for plaintiff.

David K. Davis, Asheville, NC, for defendant.

## MEMORANDUM AND ORDER OF DISMISSAL

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's motion to dismiss which is opposed by the Plaintiff. For the reasons stated herein, the motion is granted.

## I. STANDARD OF REVIEW

"A complaint should not be dismissed for failure to state a claim upon which relief may be granted unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir.2003).

## II. ALLEGATIONS OF THE COMPLAINT

The complaint alleges that during the early morning hours of March 31, 2001, in the Great Smoky Mountains National Park,[1] the Plaintiff's Decedent was killed when the vehicle in which she was riding slid and rolled down an embankment after the shoulder of the road on which the vehicle was traveling gave way. The allegations against the United States involve failure to provide access across Forest Service Road 288, negligent inspection, maintenance and upkeep of that road and the shoulder adjacent thereto, and negligent design, construction and drainage thereof. It is also alleged that although the Plaintiff submitted and pursued an administrative claim pursuant to the Federal Tort Claims Act, the final determination was adverse.

## III. DISCUSSION

■ The Federal Tort Claims Act [FTCA] provides that the United States may be sued as a defendant for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b)(1) (emphasis added). "The Supreme Court has observed that 'we have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State—the source of substantive liability under the FTCA.' ... [T]he FTCA was designed 'to provide redress for ordinary torts recognized by state law.'" *Ochran v. United States,* 273 F.3d 1315,

---

1. There is some question as to whether the accident occurred within this Park or the Pisgah National Forest. In either event, there is no dispute that the accident occurred on federal land.

1317 (11th Cir.2001) (quoting *FDIC v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)); *accord, Clark v. United States*, 326 F.3d 911, 914 (7th Cir. 2003) ("An alleged violation of a federal statutory duty cannot form the basis of a FTCA claim."). Therefore, the issue is whether the law of North Carolina would recognize a tort cause of action in connection with an injury occurring on a road located within recreational property.

■ In North Carolina, "an owner of land who either directly or indirectly invites or permits without charge any person to use such land for educational or recreational purposes owes the person the same duty of care that he owes a trespasser[.]" [2] N.C. Gen.Stat. § 38A–4. That is, the statute "imposes upon a landowner the duty to 'refrain from the willful or wanton infliction of injury.'" *Clontz v. St. Mark's Evangelical Lutheran Church*, 157 N.C.App. 325, 330, 578 S.E.2d 654, 658 (2003) (quoting *Nelson v. Freeland*, 349 N.C. 615, 618, 507 S.E.2d 882, 884 (1998)). The Defendant argues that this statute extends to the current situation because the accident occurred within the Pisgah National Forest, a federally owned recreational preserve. The Plaintiff responds that the accident stems from the negligent maintenance of a public road, not a recreational area, noting that the North Car-

olina statute does not include "road" in the definition of "land."

■ The recreational use statute actually defines "land" as including "real property, land, and water[.]" N.C. Gen.Stat. § 38A–2(3). "Recreational purpose" means any "activity undertaken for recreation, exercise, education, relaxation, refreshment, diversion, or pleasure." N.C. Gen.Stat. § 38A–2(5). At the time of the accident here, the occupants of the vehicle were attempting to access a part of the Forest in order to locate a campsite. They were traveling on a Forest Service Road at the time, *i.e.*, a road located within the Pisgah National Forest. "While plaintiff[ ] define[s] this activity as [use of a public road], rather than 'recreation,' the court finds plaintiff['s] definition to be a distinction without a difference." *Hoop v. United States*, 94 F.Supp.2d 703, 707 (E.D.N.C. 2000). The fact is that the group in the vehicle was trying to get to a campsite and they were doing so *via* the use of a road located within a recreational area. *Id.* ("[A]t the very least, plaintiff[ ] [was a] recreational user[ ] of the land and therefore entitled to the same duty of care as a trespasser."). The fact that the occupants were using a road for access to the campsite does not alter their status as recreational users. Nor does the Court find that "road" is excluded from the statute's definition of real property or land. The

**2.** The complaint did not allege that any portion of the area was subject to a usage fee. In responding to the Government's motion to dismiss, the Plaintiff argued the Court should take judicial notice that a fee is charged for the parking area adjacent to Max Patch Mountain. Plaintiff also subsequently moved to amend the complaint to contain such an allegation. The Court finds this conduct by Plaintiff's counsel borders on violating Federal Rule of Civil Procedure 11. Counsel should not have made such allegations without first verifying the same. *See,* Affidavit of United States Forest Service Law Enforce-

ment Officer Claude Stribling, dated October 16, 2003, *attached to* Reply of the United States to Plaintiff's Response to the United States Motion to Dismiss and to Plaintiff's Motion for Leave to Amend, filed October 16, 2003 ("There is not now and has never been any public use fee associated with the use of Forest Road 288, nor for any area of National Forest accessed by Forest Road 288. There is not now and has never been any public use fee associated with the use of Max Patch Mountain, nor for any area contiguous to Max Patch Mountain.").

Court declines the Plaintiff's invitation to find that because the road is used for access to the National Forest, all users thereof become direct invitees instead of recreational users. *Fesmire v. United States,* 9 Fed.Appx. 212, 214 (4th Cir.2001) ("Even if the Estate is correct [that the use of the road was by invitation], however, Fesmire's use of the property was recreational, which means that the duty owed her was the same duty to refrain from willful and wanton injury that is due a trespasser. Thus, it is clear that, whatever Fesmire's status, the United States owed a duty to refrain from committing a willful or wanton injury."). At most, the Plaintiff was an indirect invitee using the Forest Service Road to gain access to the campsite. *Id.* "The statute does provide an exception—imposing a duty to warn of 'artificial or unusual hazards of which the owner has actual knowledge'—but this exception applies only to *"direct invitees."* By negative implication, therefore, there is no duty to warn trespassers or indirect invitees of artificial or unusual hazards." *Id.,* at 215 (quoting N.C. Gen.Stat. § 38A–4). To find otherwise would render the recreational use statute meaningless. *Id.; accord, Mattice v. U.S. Dep't of Interior,* 969 F.2d 818, 821 (9th Cir.1992) ("Any other interpretation would be inconsistent with the legislative intent of encouraging landowners to open their property to the public for recreation.... There is no question that the statute applies to public federal roads on recreational land."); *Chance v. United States,* 168 F.3d 498 (table), 1999 WL 89109, *1 (9th Cir.1999) ("The threshold inquiry in applying a recreational use statute is whether 'the plaintiff's purpose in entering the property was recreational'" (quoting *Mattice, supra*); holding

motorcycle rider injured on national forest road was a recreational user, although at the time of injury, he was on the road to go home.); *Relyea ex rel Relyea v. United States,* 220 F.Supp.2d 1048 (D.Ariz.2002); *Johnston v. United States,* 2002 WL 1554354 (W.D.N.C.2002).

■ The status of the Plaintiff having been resolved, the remaining issue is whether the United States breached its duty of care not to willfully or wantonly cause injury to her [3].

> To constitute willful injury there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a design, purpose, or intent to do wrong and inflict injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom. Ordinary negligence has as its basis that a person charged with negligent conduct should have known the probable consequences of his act. Wanton and willful negligence rests on the assumption that he knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results.

*Hoots v. Pryor,* 106 N.C.App. 397, 407, 417 S.E.2d 269, 276 (1992); *Hoop,* 94 F.Supp.2d at 708. Plaintiff alleges the following willful and/or wanton acts: (1) the Defendant created an artificial or unusual hazard; (2) the Defendant had actual knowledge thereof; (3) the Defendant failed to inspect the road; (4) the Defendant failed to maintain the road; (5) the Defendant failed to detect a soft shoulder; (6) the Defendant failed to comply with

**3.** The Court recognizes the Plaintiff's motion to amend the complaint and applies the law to the allegations of the proposed amended complaint as well as to the complaint. Because, however, amendment would ultimately be futile, the motion to amend will be denied. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH,* 335 F.3d 303 (4th Cir.2003).

applicable Forest Service regulations[4]; and (7) the Defendant failed to provide a warning that the shoulder was soft. These allegations are contained within the proposed amended complaint. The pertinent allegations from the complaint are that at an undisclosed time during the evening of March 30, 2001, the occupants left Cocke County, Tennessee, "for a weekend camping trip"; and at approximately 2:15 a.m. on the morning of March 31, 2001, the vehicle was on Forest Service Road 288 headed toward the parking area for Max Patch Mountain. Because the bridge providing access was washed out, the occupants turned the vehicle around, and at approximately 3:00 a.m., reversed their direction on Road 288. At this time, the driver drove around a tree in the road which he had previously passed. In order to drive around the tree, the driver drove onto the right shoulder of the road at which time the shoulder "gave way" causing the vehicle to roll. This occurred, according to the complaint, due to recent numerous storms and saturation of the shoulder. The tree, "upon information and belief," had been in the road for three to four weeks prior to the accident, and the road and shoulder had not been cleared for four to five months prior to the accident.

Instructive to the court are cases in which North Carolina courts have determined actions to be wanton.... The court cannot find, and the parties have not provided, any North Carolina cases with facts similar to the ones presented here. Somewhat similar are cases dealing with allegations of gross negligence on the part of railroads in maintaining certain railroad crossings.... An ultra-hazardous railroad crossing creates a duty on the part of the railroad to use mechanical warning devices to, in effect, "gate off" the road. The failure of a railroad to use such devices does not necessarily amount to wanton conduct. As expressed by the [North Carolina Court of Appeals], "[t]he key question is whether the railroad company exercised reasonable care under the circumstances." After a neighbor child died in the property owner's swimming pool, the parents of the child brought a negligence action against the property owners. The plaintiffs alleged willful and wanton misconduct due to the property owners' failure to have proper life saving equipment by the pool, for not having a ladder in the deep end of the pool, for failing to install an underwater light and for allowing children to swim in the pool. The [North Carolina] court found that none of these failure rose to the level of wanton conduct.

*Hoop*, 94 F.Supp.2d at 708–09 (quoting *Parchment v. Garner*, 135 N.C.App. 312, 520 S.E.2d 100, 104 (1999)) (other internal citations omitted). The Plaintiff here has alleged a failure to warn of a soft shoulder after voluminous rainfall and to clear the road of the tree. The Fourth Circuit has "found no case in North Carolina which holds that the passive conduct of a landowner is deemed to be an act performed 'intentionally with a reckless indifference to the injuries likely to result.'" *Fesmire*, 9 Fed.Appx. at 215. Plaintiff was at most an indirect invitee. "The North Carolina legislature made a deliberate choice not to extend its exception to the trespasser rule to indirect invitees[.] Thus, the United States owed no duty to inform [Plaintiff] of the hazardous condition ... by ... posting warning signs." *Id.* In other words, it is not that unusual to encounter fallen trees

---

**4.** As previously noted, violations of federal statutory duties do not form the basis of a FTCA claim. *Clark, supra.*

in a national forest or to find that the shoulder of a forest road is soft after voluminous rainfall. If the North Carolina courts have not found inadequate railroad crossings or swimming pool safety amounts to wanton conduct, the alleged misconduct here certainly does not rise to that level. And, there has been no allegation that the Government, even if it had actual knowledge of the tree and shoulder, coupled that knowledge with a design, purpose, or intent to do wrong and inflict injury. *See, e.g., Mattice,* 969 F.2d at 823 ("We [have] carefully distinguished between the inherent danger of the canyon roads and the hidden danger of that particular spur."). "The accident in this case was a most unfortunate tragedy. But it was not an accident for which the United States, as landowner where the accident occurred, was liable in tort under North Carolina law." *Fesmire, supra; Nelson, supra; Clontz,* 157 N.C.App. at 330, 578 S.E.2d at 658 ("The complaint fails to allege willful or wanton infliction of injury by [the Government]; therefore, the trial court correctly granted the Rule 12(b)(6) motion on the claim of premises liability.").

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss is **GRANTED** and this action is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Plaintiff's motion to amend is hereby **DENIED** as futile.